G. E. MILLER et al., Appellants,

v.

Ralph D. CERCY et al., Appellees.

No. 7422.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 18, 1965.

Rehearing Denied Feb. 15, 1965.

Lumpkin, Watson, Dunlap & Smith, Amarillo, for appellants.

Robinson & Fotheringham, Amarillo, for appellees.

DENTON, Chief Justice.

This suit was brought by appellants for the alleged breach of a written contract. G. E. Miller & Company, by its president, G. E. Miller, contracted in writing to sell forty per cent (40%) of the corporate stock of Radio Station KBUY of Amarillo, Texas, to Ralph D. Cercy and C. Paul Henson. Cercy and Henson filed a cross action seeking a recovery of three promissory notes which were executed as part of the sales transaction. Upon plaintiffs' motion, the trial court appointed a master in chancery as authorized by Rule 171, Texas Rules of Civil Procedure. The master filed two reports which were approved, confirmed, and adopted by the trial court. Based upon the master's reports the trial court entered judgment for appellees, defendants below, for the sum of $4,406.88 and assessed the fee of the master in chancery of $1,915.49 against the plaintiffs.

The contract sued upon was executed on July 28, 1961, and by its term was to become effective August 1 of that year. Appellants agreed to sell appellees forty per cent (40%) of the stock of Radio Station KBUY for the sum of $20,000.00 and other

stated consideration. Cercy and Henson went into possession and operation of the radio station, and Cercy was designated as the station's general manager for a period of one year. The appellees were to receive no salary but were to receive up to ninety per cent (90%) of each month's net profit for services rendered. Upon taking over the management of the station on August 1, 1961, Cercy and Henson executed their note in the amount of $20,000.00 payable to G. E. Miller & Company on or before July 31, 1962. On the same date G. E. Miller, as president of Radio Station KBUY, executed a $2,500.00 note payable to Cercy and Henson on or before five years from that date. The latter note bore interest at the rate of six per cent (6%) per annum payable at the end of each year. This note contained· the following provision:

"It is understood and agreed that the failure to pay any installment of principle or interest of this note shall at the election of the holders of this note, mature said note and it shall at once become due and payable."

On August 10, 1961 and September 29, 1961, Cercy, acting in the capacity of general manager and vice president of the radio station, executed notes in the amount of $2,500.00 and $5,000.00 respectively, payable to Cercy and Henson on demand. The latter two notes represented money placed into the station's treasury for working capital.

On June 1, 1962, appellants filed their original petition in this cause. Several amended petitions and answers were filed prior to the appointment of John Sanderson, a licensed attorney and certified public accountant as master in chancery on July 25, 1963. The order of reference appointing the master spelled out in some detail the duties to be carried out by the master in making his report. He was ordered, among other things, to compile an itemized list of outstanding accounts receivable as of July 31, 1961; debts, notes

and accounts payable as of July 31, 1961; debts subsequently paid by the radio station; accounts receivable as of July 31, 1962; accounts payable as of that date; to compile a list of advertisers and amounts owed during the year involved; debts of the station incurred by Cercy and Henson; and amounts withdrawn by the said Cercy and Henson. The master in chancery was further instructed to determine whether or not fraud had been committed by any of the parties; whether either of the parties committed any acts constituting a breach of the contract; whether there was a want of consideration for the written contract; whether or not there was a novation of the contract; estoppel; whether or not an oral contract was made between the parties to replace the written contract as pleaded by appellees; and to determine the nature and extent of any damages sustained by the plaintiffs or defendants.

The master's report was returned into court and filed October 7, 1963. The trial court confirmed and approved the report on October 29, 1963. On November 4, 1963, plaintiffs below filed objections to the report which were leveled primarily at the assessment of the master's fees against plaintiffs; failure of the master to determine the accounts receivable as of July 31, 1962; and the contention the report was incomplete. On November 11, 1963, after a hearing thereon, the trial court entered an order to resubmit certain matters to the master. An agreement, entered in the form of an order of the court and approved by counsel of all parties, provided for the waiver of a trial by jury and agreed the trial court should treat the master's report as a jury verdict and enter judgment thereon. The agreed order contained the following language:

"the Court here now resubmits the matters heretofore referred to the Master in Chancery, and orders and disrects the said Master to make his findings according to generally accepted accounting and auditing principles, regardless of the fact it may

not be possible in his opinion to make such findings as an auditor, that he still may find and shall find the facts to the best of his ability as an auditor and as Master in Chancery, and that the parties then agree they will be bound by such findings of fact."

The master's second report filed January 3, 1964, ratified and affirmed the first report except as so modified by the second report; it further found the accounts receivable of Station KBUY amounted to $32,841.89 on July 31, 1962; and that plaintiffs below owed defendants the sum of $3,267.30. After notice and hearing the trial court entered judgment which confirmed and approved the master's findings as findings of fact of the court and awarded defendants below damages of $3,267.30, plus $1,139.58 as attorneys fees for the collection of the unpaid balance of the notes above described, together with the assessment of the master's fee against plaintiffs. Upon the motion of plaintiffs the trial court filed findings of fact and conclusions of law which substantially tracked the findings of the master in chancery. The plaintiffs took no exception to the trial court's findings and no additional findings were requested.

Appellants in effect challenge the trial court's judgment which approved the master in chancery's report on the grounds the report departed from the court's instructions and agreement of the parties; in failing to enforce the written contract; in failing to reform the three promissory notes; in assessing the master's fee against appellants; the trial court abused its discretion in making its thirty-one findings of fact and ten conclusions of law; and in failing to enter judgment for appellants for $8,866.69 as found by the master to have been wrongfully withdrawn by appellees from the radio station's treasury.

The evidence before the trial court and the master's report included numerous exhibits, oral depositions, and testimony.

The evidence was voluminous and technical. There were apparently three sets of books maintained by the various parties: a general ledger and other records were kept by Miller in his Dallas office; a set of records kept by the radio station; and some records were kept by Cercy and Henson. The apparent incompleteness of the records, the number of separate records being kept, the manner in which the records were kept, and the practice of engaging in "trade-outs" of merchandise for the broadcast of commercials, which was not reflected in the records, made it most difficult for the master to compile a report according to generally accepted accounting principles. The report included an exhaustive list of accounts receivable as of July 31, 1961, and as of July 31, 1962; accounts and notes payable July 31, 1961; accounts and notes payable July 31, 1962; withdrawals by Cercy and Henson; amounts received by "Capri", a corporation organized by Cercy and Henson as an affiliate advertising agency; a statement of income by the radio station for the twelve months ending July 31, 1962; and a computation of balances owed as between the parties. On October 29 the trial court's order approving and confirming the master's report recites that no objections to such report had been filed and proceeded to approve and adopt the report filed and set the master's fee. Appellants received a copy of the master's report by mail some two days after it was filed. On November 4, some twenty-three days after notice and six days after the report had been approved by the court, appellants filed objections to the master's report. On November 11 all parties entered into an agreement in open court resubmitting aspects of the case to the master as set out above. This second report was filed January 3, 1964, and on January 10 appellants filed their motion to dismiss the second report contending it was in conflict with the terms of the written contract and the promissory notes. Further objections were filed on January 24 in which it was contended the

**630**

report was incomplete and that the master's conclusions were a departure from and in conflict with his findings.

 The master's first report which formed the general basis for his ultimate conclusions and findings was not timely objected to by appellants. Mason v. Prince, (Tex.Civ.App.), 120 S.W.2d 1087, (Writ Refused). In the absence of timely objection, the master's report was binding upon appellants as a party to such proceedings. Richardson v. McCloskey, (Tex. Com.App.), 276 S.W. 680; Forman v. Irby, (Tex.Civ.App.), 115 S.W.2d 1229, (Writ Refused). Appellants do not contend the master's report or the trial court's findings were not supported by any evidence or are against the great weight and preponderance of the evidence. As we understand it, appellants' primary contentions are that the reports were incomplete and that the master's conclusions are in conflict with his findings. In the state of this record and in view of the conclusions of the master's report under applicable rules of law, we are unable to agree. In our opinion the master's report, adopted and approved by the trial court, was prepared according to the generally accepted accounting and auditing principles insofar as the condition of the records permitted and that such report and the trial court's judgment are supported by substantial evidence.

Rule 171, T.R.C.P., provides for the appointment of a master in chancery in exceptional cases and for the awarding of reasonable compensation for such master to be taxed as costs of suit. Appellants contend it was error for the trial court to assess the master's fee against said appellants. The reasonableness of the master's fee is not questioned. The awarding or refusal of master's fees are within the sound discretion of a trial court and are not reviewable upon appeal unless it clearly appears from the record that there has been an abuse of such discretion. McGrew v. Britton, (Tex.Civ.App.), 206 S.W.2d 836,

(Refused, NRE). A review of this record reveals no such abuse of discretion on the part of the trial court.

We have considered all points of error and find no reversible error. The judgment of the trial court is affirmed.