**TEXAS BANK AND TRUST COMPANY, Petitioner,**

v.

**A. E. MOORE, Respondent.**

**No. B–8336.**

Supreme Court of Texas.

Jan. 9, 1980.

On Rehearing March 19, 1980.

Winikates & Curtis, Charles J. Winikates, Dallas, for petitioner.

Ray, Anderson, Shields, Trotti & Hemphill, Ross H. Hemphill, Dallas, for respondent.

STEAKLEY, Justice.

Texas Bank and Trust Company is the Administrator with Will Annexed of the Estate of Maggie Dove Littell, deceased. A. E. Moore is her nephew. Under circumstances later reviewed Moore came into possession of funds and properties of Mrs. Littell. This suit is by the Bank as Administrator against Moore for an accounting and to recover this property for the estate; also for exemplary damages; and for the taxing as costs against Moore of a fee for, and reimbursement of expenses to, a Master in Chancery appointed by the trial court.

The trial court rendered judgment for the plaintiff Bank in particulars later enumerated. The Court of Civil Appeals affirmed this judgment in part, reversed and remanded in part, and reversed and rendered in part. 576 S.W.2d 691. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The properties initially in controversy consisted of jewelry belonging to Mrs. Littell and of funds in accounts of Mrs. Littell in the Farm and Home Loan Association of Dallas, the First National Bank in Dallas, the First State National Bank in Texarkana, the Dallas Federal Savings and Loan Association, and the Metropolitan Federal Savings and Loan Association of Dallas.

The Bank alleged as the basis for recovery that Moore breached a fiduciary relationship to Mrs. Littell and converted her property to his use; its specific prayer was for an accounting of all property of Mrs. Littell that came into the possession of Moore; that it recover the principal sum of $40,671.44, plus interest, in addition to such sum to which it is entitled under an accounting; and that it recover exemplary damages of $50,000.

At a pretrial conference, and over the objection of Moore, the court appointed a Master in Chancery for the reasons and with the duties stated in part as follows:

ON THIS the 20th day of December, 1974, came on to be considered at pretrial conference, in the above entitled and numbered cause, since the trial is to be by jury and it appears to be requisite that findings be obtained to be used in evidence, the advisability, vel non that a master in chancery be appointed herein with appropriate duties and powers, and it appearing that such course is advisable and that James J. Hartnett is a proper person to be, and that he should be so

appointed, and that he is a citizen of this State, is not an attorney for or related to either party and should be given the following powers and placed under the following duties, it is accordingly ordered that said James J. Hartnett be and he is hereby appointed master in chancery therein with such power as the master of chancery has in a court of equity subject however to such limitations thereof as may be effected by the following specific powers and duties, viz.:

He is directed to audit and report upon the following particular issues and financial transactions and conditions, viz.:

1. Determine the money and property which was owned by the Decedent, Maggie Dove Littell, or to which she was entitled since January 1, 1967.

2. Show the amount of money that was expended for the use and benefit of the Decedent, Maggie Dove Littell, since January 1, 1967.

3. Show what money and property that was owned by the Decedent Maggie Dove Littell—or to which she was entitled; was received by the Defendant, A. E. Moore; and what he did with it, since January 1, 1967.

The detailed report of the Master prepared in conformity with this order was subsequently received and approved by the court.

At the later trial the underlying facts determinative of our disposition of this appeal were not seriously disputed, if at all. At age 90, in January 1967, Mrs. Littell suffered a broken hip and was hospitalized until March 30, 1967. She was then admitted to a Convalescent Center where she remained, with the exception of an interruption for further hospitalization, until her death on July 12, 1972, at age 96. During this time she was seriously incapacitated with respect to control of her bodily functions; she suffered from impaired hearing and eyesight; and she reached a state of confusion. Moore handled her financial affairs during this period and progressively gained control of the funds in question: first, as her agent under a power of attorney in writing checks on her accounts; then

by transfers to him as co-owner of her various accounts. Of specific concern in the posture of the case here, Moore was the beneficiary in the transfer by Mrs. Littell of two of her accounts to him, i. e., as joint tenants with rights of survivorship. He also took possession of her jewelry.

Myrtle Schroeder who attended Mrs. Littell as a private nurse during a period from 1967 until approximately six months before her death was called as a witness by the Bank. She testified that Moore would "sometimes" ask Mrs. Littell "to sign something" and "he would tell her he needed—that he needed it for the hospital or to repair the house or nurses to be paid." Rosa Donnell Mack, also a nurse, who often saw Mrs. Littell, testified, "Well, I'd say she was confused."

Blanche Bolin, a sister of Moore, testified to visits with Mrs. Littell when she was under treatment in the hospital in 1967 for a broken hip at which time she said Mrs. Littell was alert and "her old self except for having the broken hip." She also testified to later visits with Mrs. Littell at the Convalescent Center, the last of which was in company with Moore about six months before her death at which time she was "real sick." On cross examination Mrs. Bolin further testified that her brother (Moore) handled the affairs of Mrs. Littell; and that Mrs. Littell relied upon and trusted her brother.

The report of the Master in Chancery was admitted into evidence over the objection of Moore that the appointment was unnecessary and an undue expense upon the estate. The report traced and accounted for all the funds in question. The Master testified at trial that Moore was credited for all checks signed by him and drawn on the accounts of Mrs. Littell, the proceeds of which were used for her benefit. Moore does not challenge the correctness of the accounting of the funds by the Master. Indeed, he introduced into evidence a portion of the report of the Master in Chancery reading as follows:

"Additionally, after the death of Maggie Dove Littell, A. E. Moore closed the fol-

lowing accounts and transferred the money to his own personal accounts:

Metropolitan Savings and Loan Association, No. 87968, $14,959.25;

Dallas Federal Savings and Loan Association, No. 11909, $12,445.91;

State First National Bank, No. 122 397 6, $5,189.50;

State First National Bank, No. 29 630–9, $1,947.75."

In response to the only issues submitted, the jury found that Mrs. Littell did not intend to make gifts to Moore of the survivorship accounts in Dallas Federal and Metropolitan Federal; and that Moore should pay to the Estate of Mrs. Littell as exemplary damages the sum of $5,000.[1]

The trial court judgment was in part as follows:

. . . After both sides had rested and closed, the Court considered the Motion for an Instructed Verdict that had been made by the Plaintiff, and was of the opinion that it should be granted in part; that the accounts in Farm and Home Savings and Loan Association, First National Bank in Dallas, First State National Bank in Texarkana were never made into accounts with the right of survivorship; that the money in those accounts, as shown in the report of the Master in Chancery and as shown by other evidence that was introduced, belonged to the Decedent, MAGGIE DOVE LITTELL; that the total amount of such accounts remaining in the possession of the Defendant or which was unaccounted for by him at the time of the Decedent's death, totaled $11,152.92; that the jewelry in the possession of the Defendant at the time of Decedent's death was valued at $965.00.

.      .      .      .      .

As shown in the report of the Master in Chancery, $14,959.25 was in Metropolitan Savings and Loan Association and $12,445.91 was in Dallas Federal Savings and Loan Association at the time of Decedent's death.

.      .      .      .      .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, TEXAS BANK AND TRUST COMPANY as Administrator with Will Annexed of the Estate of MAGGIE DOVE LITTELL, DECEASED, have and recover from the Defendant, A. E. Moore, the sum of $39,523.08 plus ten percent (10%) interest per annum from July 12, 1972, until such sum is paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, TEXAS BANK AND TRUST COMPANY as Administrator with Will Annexed of the Estate of MAGGIE DOVE LITTELL, DECEASED, have and recover of the Defendant, A. E. Moore, the sum of $5,000.00 plus nine percent (9%) interest per annum from August 4, 1977 until such sum has been paid.

1.      *SPECIAL ISSUE NUMBER 1*

Do you find from a preponderance of the evidence that Maggie Dove Littell intended on August 13, 1969, when a joint account was opened at Dallas Federal Savings and Loan Association with A. E. Moore to make a gift of said account to A. E. Moore at her death?

You will answer "She did so intend to make a gift" OR "She did not so intend to make a gift."

ANSWER: She did not so intend to make a gift.

*SPECIAL ISSUE NUMBER 2*

Do you find from a preponderance of the evidence that Maggie Dove Littell intended on April 30, 1970, when a joint account was opened at Metropolitan Federal Savings and Loan Association with A. E. Moore to make a gift of said account to A. E. Moore at her death?

You will answer "She did so intend to make a gift" OR "She did not so intend to make a gift."

ANSWER: She did not so intend to make a gift.

*SPECIAL ISSUE NUMBER 3*

From a preponderance of the evidence, what amount of money, if any, should A. E. Moore pay to the Estate of Maggie Dove Littell as exemplary damages?

ANSWER: $5,000.00.

The Court of Civil Appeals ruled that the instruction accompanying Issues 1 and 2 was erroneous but we do not reach this question; indeed, the Court of Civil Appeals recognized that these issues are evidentiary only, and not ultimate or controlling issues.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that $8,236.77 be awarded to James J. Hartnett as a fee and reimbursement of expenses for serving as Master in Chancery; that such sum be taxed as costs of Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of Court, be, and the same are hereby taxed against Defendant A. E. Moore.

Upon appeal by Moore, the Court of Civil Appeals affirmed as uncontested the portion of the judgment awarding to the Bank as Administrator the amounts withdrawn by Moore from the accounts that were not changed to joint accounts with rights of survivorship. Moore does not contest the judgment as to these accounts.

The Court of Civil Appeals reversed and remanded the portion of the judgment awarding the value of the jewelry to the Bank as Administrator; Moore stated in oral submission, however, that the judgment of the trial court as to the jewelry was correct.

The Court of Civil Appeals reversed and remanded the portion of the judgment awarding to the Bank as Administrator the amounts withdrawn by Moore from the joint survivorship accounts in Dallas Federal and Metropolitan Federal, and the sum of $5,000 as exemplary damages.

■ The rationale of the Court of Civil Appeals was that regardless of whether or not the trial court correctly found that a fiduciary relationship existed as a matter of law, the judgment must be reversed because the Bank failed to request an issue concerning a breach of this relationship by Moore. At the same time, the Court of Civil Appeals recognized the accepted rule that once a fiduciary or confidential relationship is established, a presumption arises that a gift from the principal to the fiduciary is unfair and invalid. Moreover, the Court of Civil Appeals further correctly ruled that since the theory of recovery of the Bank was a breach of fiduciary relationship, the issues submitted by the trial court inquiring if Mrs. Littell intended to make a gift in the transactions assigning the two accounts in question to Moore as a joint tenant with survivorship rights, are evidentiary, and not ultimate and controlling issues.

We differ with the Court of Civil Appeals in these rulings in two respects only. In the first place, we hold that a fiduciary relationship was established as a matter of law under the undisputed evidence in this record; and, secondly, that the presumptive unfairness and invalidity of the transactions in question stand unrebutted in any respect by Moore.

■ This Court wrote in *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509 (1942), that the term "fiduciary" is derived from the civil law and contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction. Further, that the term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations. *Id.* 160 S.W.2d at 513; and see cases cited from this and other jurisdictions.

In accord see *Higgins v. Chicago Title & Trust Co.,* 312 Ill. 11, 143 N.E. 482, where it was said:

A fiduciary relation is not limited to cases of trustee and cestui que trust, guardian and ward, attorney and client, nor other recognized legal relations, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed, and the origin of the confidence is immaterial, and may be moral, social, or domestic, or merely personal.

*Id.* at 18, 143 N.E. at 484.

It was said in *Lappas v. Barker,* 375 S.W.2d 248 (Ky.1964), that a fiduciary relationship exists when the parties are " 'under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation'. Restatement, Torts, Section 874. It exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Id.* at 251.

**508**

In resolving the problem of the existence or not of a fiduciary relationship this Court has severely scrutinized transactions between parties where trust and confidence is reposed by one, and personal profit is gained by another. *See Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257 (Tex.1974); *Archer v. Griffith,* 390 S.W.2d 735 (Tex.1964); *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567 (Tex. 1963); and *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509 (1942). The problem is one of equity and the circumstances out of which a fiduciary relationship will be said to arise are not subject to hard and fast lines. This is well illustrated by the case of *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 120 ALR 720 (1938). In this case the courts considered the question of whether a fiduciary relationship existed between partners assumed by this Court to be such in the ordinary sense. Peckham originally sued Johnson for an accounting of the business of an alleged partnership between them while engaged in owning and operating certain oil leases. Johnson by cross action alleged among other things, that Peckham did not disclose material matters when purchasing Johnson's interest in the partnership assets and hence did not act in good faith. The judgment of the trial court was for Johnson. Upon appeal by Peckham, the Court of Civil Appeals reversed this judgment and remanded the cause. 98 S.W.2d 408. This Court, speaking through then Commissioner Hickman, later Chief Justice of this Court, first determined that one ground of the reversal, i. e., that the damages were measured by an incorrect rule, was not before the Court for review, hence the judgment of the Court of Civil Appeals must be affirmed regardless of whether that court correctly reversed the judgment on other grounds.

This Court then proceeded to determine whether the Court of Civil Appeals was in error in also ruling that the trial court erred in not submitting special issues which in substance would have called upon the jury to determine whether or not Johnson and Peckham were dealing at arm's length,

and whether or not Johnson relied on Peckham to make certain material disclosures. This in turn, said this Court, turned on a determination of whether each partner had the right to know what the other knew since each is the confidential agent of the other. The Court of Civil Appeals had ruled that this accepted rule was inapplicable because of evidence that strained relations had grown up between the partners, hence Peckham was justified in dealing with Johnson as a stranger.

In disagreeing with the Court of Civil Appeals, this Court wrote "[t]hat is the standard of the market place, but in courts of equity a much higher standard for measuring conduct obtains." 120 S.W.2d at 788. And further:

When persons enter into fiduciary relations each consents, as a matter of law, to have his conduct towards the other measured by the standards of the finer loyalties exacted by courts of equity. That is a sound rule and should not be whittled down by exceptions. If the existence of strained relations should be suffered to work an exception, then a designing fiduciary could easily bring about such relations to set the stage for a sharp bargain. There is no suggestion in this record that Peckham did that thing, but mischief would result more often from engrafting exceptions upon the general rule than from a strict adherence thereto.

*Id.* 120 S.W.2d at 788.

So it is here. Of course, the relationship of Mrs. Littell and Moore—that of aunt and nephew—together with Moore's assistance to Mrs. Littell, do not, standing alone, establish a fiduciary relationship. Nor, we might add, would the mere fact of the bestowing of benefits do so. But to paraphrase the words of this Court in an *analogous context in Johnson v. Peckham, supra,* that fact of a family relationship should not of itself establish an exception to the accepted rule that where trust is reposed and substantial benefits gained equity will recognize that the beneficiary in such transactions is a fiduciary, and as such is under the fiducial obligation of establish-

ing the fairness of the transaction to his principal. It should be emphasized that the imposition by equity of a fiduciary relationship in such circumstances does no more than cast upon the profiting fiduciary the burden of showing the fairness of the transactions. When Moore accepted the transfers by Mrs. Littell to him as joint tenant with survivorship rights of her funds in the two accounts in question, Moore consented to have his conduct measured by the standards of the finer loyalties exacted by the courts of equity.

Moore was called as a witness in his behalf but his testimony related generally and only to trips during the years from 1967 until the death of Mrs. Littell from his home in Texarkana to visit Mrs. Littell in Dallas. Moore did not offer any testimony to establish the fairness of the transfers by Mrs. Littell to him of her individual accounts. He did not refute in any particular the testimony of the nurse, Myrtle Schroeder, that when Moore would ask Mrs. Littell to sign something he would tell her that he needed this to pay the hospital, or the nurses, or for repairs to the house; nor the testimony of the nurse Rosa Donnell Mack, that Mrs. Littell was confused; nor the testimony of his sister, Blanche Bolin, that Mrs. Littell relied upon and trusted him. The presumption of unfairness stands unrebutted in any respect and in this posture of the case the Bank as plaintiff was not required to request an issue inquiring if Moore breached a fiducial obligation to Mrs. Littell.

Counsel for Moore in oral arguments asserted that he was precluded by Article 3716[2] commonly known as the Dead Man's Statute,[3] from offering any evidence to rebut the presumption of unfairness. This contention is not contained in his reply to the application for writ or in Moore's brief as appellant before the Court of Civil Appeals. In our investigation of the trial record before us we do not find a Motion in Limine seeking to preclude testimony to the facts and circumstances surrounding the transactions between Moore and Mrs. Littell. At the most is this dialogue between counsel for Moore and the trial judge appearing in the Statement of Facts:

MR. HEMPHILL: One more thought, Your Honor. Comes now the Defendant, A. E. Moore, and submits to the Court that by putting into evidence exhibits concerning the joint bank account of Maggie Dove Littell with A. E. Moore at Farm and Home, a savings account of Maggie Dove Littell and A. E. Moore, and all other joint bank accounts, the Dallas Federal Savings and Loan, First National Bank, Republic Bank, Mercantile National Bank, and the bank in Texarkana, that by the Plaintiff putting into evidence these matters he has put into evidence testimony concerning transactions with or statements by Maggie Dove Littell, the testator, and said witnesses were not called to testify thereto by the Defendant, and because of the actions on the part of the Plaintiff putting into evidence the transactions with the Decedent, that the Plaintiff has opened up the gate for testimony concerning further evidence by A. E. Moore concerning these transactions without violating the Court's ruling in its instructions to the Attorneys not to have parties testify in violation of the Dead Man's Statute and in keeping with the Plaintiff's Motion In limine; therefore, Defendant prays that A. E. Moore be allowed to take the stand and tell his version of what actually happened in these transactions.

THE COURT: I do not recall any witnesses testifying who would come under

**2.** Reference is to Texas Revised Civil Statutes, Annotated.

**3.** Art. 3716. In actions by or against executors, etc.

In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent.

the purview of Article 3716. The Dead Man's Statute applies only to the witnesses who are parties interested in the matter.

MR. HEMPHILL: Okay, Your Honor.

■ The foregoing is quite clearly not an advance ruling by the trial court with respect to any specific evidence that might later be tendered by Moore, or by any other witness, pertinent to the transfers by Mrs. Littell to Moore of the accounts in question. Moore was indeed called later as a witness by his counsel but no attempt was made to interrogate him in these respects. There was thus no occasion for an invocation of Article 3716 or for a ruling by the trial court with respect thereto. And see Rule 182a, Tex.R.Civ.P.

■ Apparently, it is Moore's position that the established rule of fairness previously discussed should have no application in the circumstance where the principal of the transaction from which the surviving fiduciary has materially profited has since died. We are unwilling to recognize or approve such an exception to the established rule in a vacuum such as here, i. e., where no evidence of fairness has been actually tendered and where there has been no opportunity for judicial consideration or ruling with respect to the admissibility of such evidence under Article 3716. Indeed, the disqualification imposed by the statute is not absolute and may, and well might, be waived by the absence of a proper objection. If so, the testimony is admissible and the evidence is of probative force. *See Wilbanks v. Wilbanks*, 160 Tex. 317, 330 S.W.2d 607 (1960); *Collins v. Smith*, 142 Tex. 36, 175 S.W.2d 407 (1943). There is even more reason not to disregard the rule of fairness under the circumstances here. The will of Mrs. Littell was received in evidence without objection. It was dated November 17, 1958. The will contains this devise:

"1. To my nephew, A. Eulie Moore, of Texarkana, Texas, I specially devise the real property and all furnishings in the four apartments located at 409 N. Peak Street, Dallas, Texas."

There were other special bequests, with the residuary estate divided between surviving children of her three brothers and one sister. It was further specially provided ". . . that A. Eulie Moore, having been provided for by the special devise herein shall not share in any residue." These testamentary dispositions of Mrs. Littell will be frustrated if Moore is not held to account for the funds of Mrs. Littell he took over after her death. These funds would constitute a part of the residuary estate of Mrs. Littell devised to other persons, the recovery of which is the stated purpose of the administrator of her estate in this suit.

■ We also disagree with the Court of Civil Appeals in the reversal of the award of exemplary damages in the sum of $5,000 as found by the jury. This follows from our conclusion that Moore did not overcome the presumption that his self-dealing with the funds of Mrs. Littell was unfair, and that the case of the Bank against Moore as a breaching fiduciary is established by this record. As we said in *International Bankers Life Ins. Co. v. Holloway, supra*, in recognizing the right to a recovery of exemplary damages, "[w]e should not say to defaulting fiduciaries that the most for which they can be held accountable in equity are the profits which would have remained theirs had they not been called to account." *Id.* at 584.

■ Finally, the Court of Civil Appeals ruled that the trial court abused its discretion in the appointment of the Master in Chancery, and reversed and rendered this portion of the trial court judgment. We again disagree and hold that the trial court did not abuse its discretion in the appointment of a Master in Chancery, and in the award to the Master as fee and expense reimbursement the sum of $8,236.77, taxable as costs.

Rule 171, Texas Rules of Civil Procedure provides:

The court may, in exceptional cases, for good cause appoint a master in chancery, who shall be a citizen of this State, and not an attorney for either party to the

action, nor related to either party, who shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master of chancery has in a court of equity.

The order of reference to the master may specify or limit his powers, and may direct him to report only upon particular issues, or to do or perform particular acts

.  .  .  .

.  .  .  .  .

.  .  .  The court shall award reasonable compensation to such master to be taxed as costs of suit.

█ The appointment of a Master in Chancery to assist the trial court in resolving the issues of a case, together with the awarding of Master's fees and expenses, are within the sound discretion of the trial court. *Huber v. Buder,* 434 S.W.2d 177 (Tex.Civ.App.1968, writ ref'd n. r. e.); *Miller v. Cercy,* 386 S.W.2d 627 (Tex.Civ.App. 1965, writ ref'd n. r. e.). *Bell v. Bell,* 540 S.W.2d 432 (Tex.Civ.App.1976, no writ) cited by the Court of Civil Appeals is not apposite. The suit of the Bank asserted claims against Moore on behalf of the estate for money and property which had come into possession of Moore at different times, and had been held by or expended in part by him at various times and for different purposes, over a period of approximately six years. The individual accounts of Mrs. Littell and the subsequent joint accounts with Moore involved at least five separate banks and savings and loan associations. It was to the advantage and in the interest of all parties, including Moore, that there be a full, complete and impartial accounting of all the funds. As before noted, Moore does not challenge the correctness of the accounting of the funds or the credits in his favor for checks drawn by him for the use and benefit of Mrs. Littell. Nor, indeed, does he question the reasonableness of the Master's fee. A trial court should be free to exercise its discretion in the appointments of a Master and should be reversed only when there is a clear abuse of this discretion. We hold that such is not shown under the record here.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Dissenting Opinion by GREENHILL, C. J., in which McGEE and DENTON, JJ., join.

GARWOOD, J., not sitting.

GREENHILL, Chief Justice, dissenting.

I agree with the able opinion of the court of civil appeals, 576 S.W.2d 691 (1979).

Many friends and relatives are called upon to assist people of advanced years or who face major medical problems. Sometimes the action is one of kindness and at the request of the person in need of help, and is purely for the purpose of accommodation.

Even if this is the type of case not to be tried on issues of lack of capacity or undue influence, or both,—as to which I express no opinion, whether these friends or relatives have entered into a confidential relationship is a question of fact, and is not, as this court holds, a question of law. *Schiller v. Elick,* 150 Tex. 363, 240 S.W.2d 997 (1951); *MacDonald v. Follett,* 142 Tex. 616, 180 S.W.2d 334 (1944); *Ginther v. Taub,* 570 S.W.2d 516 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.).

I do not read *Stephens County Museum, Inc. v. Swenson,* cited by the court, as holding that there was a fiduciary relationship as a matter of law. To the contrary, there were jury findings to support the judgment.

The opinion of the court places a good deal of emphasis on the lack of capacity of Mrs. Littell, and what amounts to undue influence exercised over Mrs. Littell in her weakened state. There were no issues given or requested on either lack of capacity or undue influence. The court has just decided that people in this situation are in a confidential relationship as a matter of law. Having created this status of the parties, they place others similarly situated in an extremely difficult position; i. e., the person assisting the elderly, or others, are

called upon to explain their transactions with the person helped. If, as in this case, the person assisted is dead, the assister will be met by the Dead Man Statute; i. e., he cannot give testimony as to his transactions with the deceased. So he must, as a matter of law, explain; but he cannot explain.

What this boils down to is that a person, be it a member of the family or a close friend, is presumed to be dishonest and he must explain his actions,—and the court is not disturbed about the Dead Man Statute. The record in this case is such that there is no point on it to sustain or overturn. In the next case, counsel will be in a position of having to offer evidence about transactions with the deceased which he or she knows, or should know, are inadmissible. To say the least, this puts counsel in a delicate position with the court.

I think our position would be much better if we, like the court of civil appeals, left it to the jury to decide whether the assister is in a fiduciary capacity with the person that he or she is attempting to help.

If there is not a fiduciary relationship, the burden is upon the plaintiff to prove that there was a lack of capacity, undue influence, or other allegations to sustain or recover. If there is a confidential relationship, then, as here, the defendant actor has the onerous burden of explaining his or her actions. The burden of proof or persuasion is upon such actions,—made much more difficult where the Dead Man Statute is applicable. In *this* case, however, the court has held that the fact of blood relationship and opportunity,—with the assumption of incapacity and undue influence, creates a confidential relationship as a matter of law.

The court obviously thinks that the actor here wore a black hat. In my opinion, it is a case of bad facts making bad law. The hat of the next person may be gray or white,—in which case we will have to explain or distinguish this case.

McGEE and DENTON, JJ., join in this dissent.

## ON MOTION FOR REHEARING

STEAKLEY, Justice.

In our original opinion we stated that "In our investigation of the trial record before us we do not find a Motion in Limine seeking to preclude testimony to the facts and circumstances surrounding the transactions between Moore and Mrs. Littell." We are told by counsel for Moore On Motion for Rehearing that there was such a motion tendered; and that the motion "was not in the Transcript because the case neither went up on the Dead Man's Statute on appeal to the Court of Civil Appeals nor Writ to this Honorable Court." A copy of such motion was attached to the Motion for Rehearing. Upon examination of the motion we find the typical language copied in the margin.[1]

The opinion of the Court did not turn on the existence or not of such a motion. The motion did no more than determine that if counsel for Moore was of the view that evidence he desired to tender upon the issue of the fairness of the transactions between him and Mrs. Littell would be admissible in carrying his burden of showing the fairness of the transactions, he would apprise the court and opposing counsel of such matters and obtain a ruling of the court before making such matters known to the jury.

No evidence was offered by Moore that called for such a ruling by the trial court, hence there was nothing brought forward by bill of exception or otherwise for appellate review regarding the admissibility of

1. Plaintiff moves the Court to instruct the Defendant and his counsel in this cause and order them in turn to instruct all witnesses they place upon the stand, not to interrogate about, mention or attempt to introduce any matter that would be in violation of Article 3716 of the Texas Revised Civil Statutes (Dead Man's Statute) within the hearing of the jury panel.

Further, Plaintiff moves that if Counsel for Defendant feels that some transaction between the Decedent and the Defendant is admissible, Counsel for Defendant shall first apprise the Court and opposing Counsel of such matters and obtain a ruling from the Court before making such matter known to the jury.

such evidence under Article 3716. The reasons for this course of trial are best known to counsel for Moore acting in the best interests of his client. But this is why we wrote originally:

Apparently, it is Moore's position that the established rule of fairness previously discussed should have no application in the circumstance where the principal of the transaction from which the surviving fiduciary has materially profited has since died. We are unwilling to recognize or approve such an exception to the established rule in a vacuum such as here, i. e., where no evidence of fairness has been actually tendered and where there has been no opportunity for judicial consideration or ruling with respect to the admissibility of such evidence under Article 3716.

In essence, the case as it reaches us represents an assault upon the fiduciary-fairness rule heretofore embraced by this Court. We adhere to the rule and its application here for the reasons articulated in our original opinion.

The Motion for Rehearing is overruled.

BARROW, J., concurs.

GARWOOD, J., not sitting.

BARROW, Justice, concurring.

I concur in the affirmance of the judgment of the trial court. I do not agree that the record establishes a breach of a fiduciary relationship as a matter of law merely because Moore accepted the transfers by Mrs. Littell to him as joint tenant with survivorship rights of her funds in the two savings accounts. There is evidence that from the time Mrs. Littell became physically incapacitated from a broken hip in 1967 until her death in 1972, Moore alone took care of her physical as well as her financial affairs. As her designated next of kin and the only relative who looked after her during her long confinement, Moore paid all her bills and saw to her other needs.

There is no allegation of undue influence or lack of mental capacity in the execution by Mrs. Littell of the necessary forms to convert the two accounts to joint survivorship accounts. Her signatures on these accounts were witnessed by several of the nursing staff of the convalescent center where Mrs. Littell was confined, including the private nurse who looked after her for several years. Obviously, if Mrs. Littell was "confused" about this purpose or had been overreached, petitioner could have easily obtained such evidence. There is testimony from officers at the two institutions where these two survivorship accounts were opened that there was nothing unusual in an elderly woman opening this type account so that her bills could be paid during her confinement by her next of kin. All of this testimony raised a fact issue, at the very least, as to whether Moore breached his fiduciary relationship with his aunt by permitting her to open these joint survivorship accounts.

Nevertheless, there is testimony from the Master in Chancery that the sum of $4,015.67 received by Moore from monies belonging to Mrs. Littell was not accounted for by Moore. This uncontroverted testimony, together with the jury finding that Mrs. Littell did not make a gift to Moore of the two survivorship accounts, supports the judgment of the trial court.

I concur in the affirmance of the trial court's judgment.