**A. C. ARRINGTON, Appellant,**

v.

**Ruby ARRINGTON, Appellee.**

No. 18300.

Court of Civil Appeals of Texas, Fort Worth.

March 19, 1981.

Clyde R. Parks, Dallas, for appellant.

Alfred J. Jackson, Jr., Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

Albert C. Arrington has appealed the judgment which divorced him from his wife, Ruby D. Arrington, divided their property and made Mrs. Arrington managing conservator of Bonnie Lou, their dog.

We have a motion to dismiss the case, filed by Mrs. Arrington, claiming a late filing of Mr. Arrington's motion for new trial (eleven days after judgment). However, the supplemental transcript filed on February 5, 1981, reflects the judgment as having been signed on July 16, 1979; Mr. Arrington's motion for new trial filed ten days later on July 26, 1979; and his amended motion for new trial filed on August 15, 1979 (twenty days later). Judgment nunc pro tunc was signed by the trial judge on August 22, 1979 (after a hearing on Mr. Arrington's motion for new trial). Cost bond and notice of appeal were filed by Arrington on September 20, 1979 (twenty-nine day interval).

On October 5, 1979 trial court overruled Mr. Arrington's motion for new trial.

Since the original motion for new trial was filed on the tenth day after the judgment was signed, trial court did not lose jurisdiction to enter the nunc pro tunc judgment. We cannot dismiss this appeal for lack of jurisdiction and the motion to dismiss is denied.

Having disposed of this preliminary, we affirm the judgment of the trial court.

Mr. and Mrs. Arrington were married on February 2, 1963. They each owned separate property and had grown children living away from home. When the parties got married Mrs. Arrington owned some mutual fund stocks; an automobile; certain household furniture, furnishings, fixtures, and appliances; some Southwest National Bank stock; her personal effects, clothes, jewelry, and personal belongings; a house located at 5436 Wales in Fort Worth, Texas; and some money deposited in the Southwest National Bank. She was employed by Wedgewood Enterprises.

Mr. Arrington owned one-half of a golf course and driving range lease located off University Drive and Jacksboro Highway in Fort Worth, Texas; about twelve inexpensive used cars; two chest-of-drawers; and a 12-unit apartment complex mortgaged to Tarrant Savings Association. He owed some debts and taxes.

Trial of the divorce suit commenced on April 17, 1979, and ended on April 20, 1979. On June 7, 1979, the judge orally rendered his decision in open court with both parties and their attorneys present. On June 2 and 4, 1979, motions for entry of judgment were filed by attorneys for both parties. On July 12, 1979, the trial judge granted Mrs. Arrington's motion and signed the judgment on July 16, 1979.

On July 26, 1979, Mr. Arrington filed a request for findings of fact and conclusions of law. It was received by the trial judge on July 30, 1979. He also filed a second request for findings of fact and conclusions of law on October 4, 1979. Nothing in the record reflects that it was presented to the judge.

The property division of which Mr. Arrington complains gave him:

1. The Rockwood Par 3 Golf Course and Driving Range together with all furniture, fixtures, appliances, machines, improvements, equipment, personal property, accounts receivable, the lease contract thereon, and cash deposited in the Rockwood Par 3 Golf checking account at the Southwest National Bank, and all debts owed thereon.

2. The twelve (12) unit apartment house located at 619 Hemphill known as Lot 5,

Block 6, Grainger Addition to the City of Fort Worth, Tarrant County, Texas, together with all furniture, fixtures, appliances, accounts receivable, and improvements thereupon situated.

3. Lots 6 and 7 of the Long Creek Subdivision of Hood County, Texas, together with the boat house, boat dock, retainer wall, rock work, building, furniture, fixtures, appliances, personal property, and improvements thereupon situated.

4. The 1963 Chevrolet station wagon; the 1966 Dodge automobile; the homemade trailer; the 1959 Ford pickup, the 1959 Fordston tractor; the two Sears, Roebuck & Company tractors; and the three grass mowers.

5. All of his rifles, shotguns, pistols, tools and repair kit; the 14-foot fiberglass boat with 50 h. p. Johnson motor; the 12-foot aluminum boat; his sporting and golf course equipment; his assortment of golf clubs, golf balls, and the golf carts.

6. The $1,000.00 deposited in his Keogh Retirement Plan; all cash deposited in his checking account at the Southwest National Bank; the Ronnie Ledford debt; the David Hull debt, and his coin collection held in trust at Continental National Bank.

7. All of his personal effects, clothes, jewelry, personal belongings, and cash deposited in his personal checking accounts; and his chest-of-drawers.

8. All his stock, securities, and investments with Rauscher Pierce Securities Corporation, and the $28,419.00 cash he drew out of his account at Rauscher Pierce Corporation while this divorce suit was pending.

9. All stock certificates and dividend checks registered in the name of Albert C. Arrington with Cullum Companies, Inc.; all of A. C. Arrington's investments with Rosenthal & Company; and all cash deposited in his checking accounts at Central Bank & Trust; and all other stock owned by him.

Mrs. Arrington was awarded:

1. The house and lot located at 5436 Wales known as Lot 2–R of a Revision of Lots 1 through 6 in Block 10 of Wedgwood Addition to the City of Fort Worth, Tarrant County, Texas, subject to the indebtedness owed thereon at American General Investment Corporation.

2. All household furniture, furnishings, fixtures, and appliances situated in the house and garage at 5436 Wales in Fort Worth, Texas.

3. All of her certificates of deposit with Southwest National Bank; the $200.00 deposited in Tarrant Savings Association; and all cash deposited in the A. C. Advertising Agency/Wedgwood Shopper News checking account at the Southwest National Bank; and all passbook savings accounts in her name.

4. The wrecked 1969 Cadillac automobile and the $1,100.00 insurance proceeds to be received thereon; and her 1974 Dodge Polara automobile.

5. Her $1,000.00 deposited in the Keogh Retirement Plan, her 785 shares of stock in Southwest National Bank; her $1,000.00 church bond which matures in 1981; and the business known as A. C. Advertising Agency and Wedgwood Shopping News, together with all assets, subscription lists, machines, accounts receivable, furniture, fixtures, equipment, and personal property associated therewith, and all debts owed thereby, including the printing machine debt owed to the Southwest National Bank.

6. Her 100 shares of Texas Utilities stock; 200 shares of Pulte Homes stock; 100 shares of Clorox stock; 200 shares of Dr. Pepper stock; 25 shares of Stafford-Lowden stock; 38 shares of Tenneco stock; 200 shares of John Deere stock; and all other stock registered in her name.

7. The six (6) unit apartment house located at 1105 Alston known as the South 55′ of the North 115′ of the West 90′ of Lot 10, Block E, Fields Welch Addition to the City of Fort Worth, Tarrant County, Texas, together with all household furniture, fixtures, appliances, buildings, and improvements thereupon situated.

8. All cemetery lots in Greenwood Memorial Park.

9. Lot 21, Block 1, Mesa Grande Addition to Hood County, Texas, together with all improvements thereupon situated.

10. All of her personal effects, clothes, jewelry, personal belongings, and cash deposited in her personal checking accounts.

On February 24, 1964, the Arringtons jointly borrowed $9,375.00 from the Bank of Commerce by pledging some of her stock as collateral on the loan. They deposited the $7,000.00 or $7,500.00 received from this loan into a checking account and paid $2,403.50 to Bob Willoughby for his one-half undivided interest in the Rockwood Par 3 (a/k/a Rose Garden) Golf Course and Driving Range. The remaining balance of the borrowed money was used to pay off a tax lien against the property, to pay back taxes, and to make community improvements on the golf course and driving range.

The twelve used cars were sold during the marriage without the proceeds being traced. The community estate of the parties paid about $1,500.00 to Tarrant Savings Association on the 619 Hemphill Apartments. Those income tax returns which were introduced into evidence, Mr. Arrington's checks, and the testimony of Mr. Arrington show substantial community funds were expended, maintaining, repairing, and improving the Rockwood Par 3 Golf Course and the 619 Hemphill Street Apartments. Real estate appraiser John E. Lutz and Mrs. Arrington testified that the fair market value of the apartments was $30,000.00. Lutz also testified the Rockwood Par 3 Golf Course and Driving Range had a fair market value of $50,000.00 on April 5, 1979.

By the judgment the trial court decreed a division of the property. The parties do not complain as to any separate property divestiture (excepting two chests-of-drawers of Mr. Arrington's). Otherwise, Mr. Arrington's complaint concerns the division of the community property with undue consideration given the parties' respective separate property.

■ The first point of error complains that the trial judge failed to make findings of fact and conclusions of law. Since the record is silent as to Mr. Arrington's request for findings of fact and conclusions of law having been presented to the trial judge, we overrule this point. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977). Filing alone is not enough; the trial judge must have the omission called to his personal attention. Tex.R.Civ.P. 297.

Point of error no. 2 complains of trial court's award of some of Mr. Arrington's separate personalty to Mrs. Arrington. In its original judgment the trial court did award "[a]ll household furniture ..." to Mrs. Arrington, but, in its nunc pro tunc judgment, it awarded Mr. Arrington his chest-of-drawers. Since the point of error relates to Mr. Arrington's drawers (per his argument in his brief), and since Mr. Arrington got his drawers in the amended judgment we overrule this point of error.

■ Mr. Arrington, by points of error nos. 3 and 4, complains of the trial court's award to him of the Ledford and Hull debts. His reasoning is that they were worthless or non-existent and that the trial court was wrong in including them as assets. Mr. Arrington testified that Ledford owed him five or six hundred dollars and that Hull did not owe him anything. He said that Hull had paid the $9,000.00 around the first of March of "last year". He said he took the money and paid $6,000.00 on "the lease" and "gave $2,000.00 to Bob Willoughby to support—to start off the golf range and course." Mr. Arrington had listed these notes in the inventory and appraisement as notes receivable at $9,500.00. We hold the evidence to have been sufficient for the trial court to conclude the Arrington benefit of the $9,000.00 note as accruing to the golf course awarded to him and that he was in a better position to collect from Ledford than Mrs. Arrington. *Cooper v. Cooper*, 513 S.W.2d 229 (Tex.Civ. App.—Houston [1st Dist.] 1974, no writ). We therefore overrule points of error nos. 3 and 4.

In point of error no. 5 Mr. Arrington says that the trial court erred in considering the $28,419.00 cash "he drew out of" his account at Rauscher Pierce while this divorce suit was pending because of no and insufficient evidence that such property existed at the time of trial. Since he admitted withdrawing such amount of money between May 27, 1977 and April 20, 1979 in the face of a restraining order and an injunction of the trial court, he does not appear to be in a very good position to urge a lack of evidence. His concealing or disposing of the funds under such circumstances would sustain sufficiently the order of the trial court allowing him the $28,419.00 cash withdrawal as part of his share. Courts have a wide discretion in making a division of community and separate property. *Baxla v. Baxla*, 522 S.W.2d 736 (Tex.Civ.App.— Dallas 1975, no writ). *Grothe v. Grothe*, 590 S.W.2d 238 (Tex.Civ.App.—Austin 1979, no writ). We overrule point of error no. 5.

Mr. Arrington claims that he should not be made to pay one-half the fee assessed by trial court for the agreed upon master. Since he waited to complain only after the case was appealed and because he had previously agreed to the order of appointment, he forfeited his right to complain on appeal. *Hosey v. First National Bank of Goliad*, 595 S.W.2d 629 (Tex.Civ. App.—Corpus Christi 1980, writ dism'd); *Griffin v. Smith*, 457 S.W.2d 127 (Tex.Civ. App.—San Antonio 1970, writ ref'd). Further, a master-in-chancery fee is not reviewable unless an abuse of discretion is clearly shown. Here such was not done. *Miller v. Cercy*, 386 S.W.2d 627 (Tex.Civ. App.—Amarillo 1965, writ ref'd n.r.e.).

Bonnie Lou is a very fortunate little dog with two humans to shower upon her attentions and genuine love frequently not received by human children from their divorced parents. All too often children of broken homes are used by their parents to vent spite on each other or they use them as human ropes in a post divorce tug-of-war. In trying to hurt each other they often wreak immeasurable damage on the innocent pawns they profess to love. Dogs involved in divorce cases are luckier than children in divorce cases—they do not have to be treated as humans. The office of "managing conservator" was created for the benefit of human children, not canine.

A dog, for all its admirable and unique qualities, is not a human being and is not treated in the law as such. A dog is personal property, ownership of which is recognized under the law. 3 Tex.Jur.3d 513 secs. 4 & 5, "Animals as Property" (1980). There was testimony that Bonnie Lou was given to Mrs. Arrington over ten years ago.

Mr. Arrington agreed to Mrs. Arrington's custody of the dog if he could have reasonable visitation. He does not complain of lack of visitation; only that he was not appointed managing conservator. We overrule point of error no. 7 with the hope that both Arringtons will continue to enjoy the companionship of Bonnie Lou for years to come within the guidelines set by the trial court. We are sure there is enough love in that little canine heart to "go around". Love is not a commodity that can be bought and sold—or decreed. It should be shared and not argued about.

In his point of error no. 8, Mr. Arrington says that trial court erred in division of the community property because in its division the court considered the separate property of each party. He "feels" that "in trial the Supreme Court ... will extend its rationale in *Eggemeyer* to the point where the community property will have to be divided equally between the parties." Until the supreme court does rule that there must be an equal division of community property we will just have to follow the law as it now is. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137 (Tex.1977).

As we understand the present law, the trial court has the discretion to base its division of property in divorces on those facts in the case that point to what the court believes is just and right. *Law v. Law*, 517 S.W.2d 379 (Tex.Civ.App.—Austin 1974, writ dism'd). Method of dividing property is within the wide discretion of the court after taking all relevant property in-

terests into consideration. *Gillis v. Gillis*, 435 S.W.2d 171 (Tex.Civ.App.—Fort Worth 1968, writ dism'd). We hold that Mr. Arrington has failed to show abuse of discretion in this case and that trial court had sufficient evidence to substantiate its division of the Arringtons' property, particularly since each party was awarded his or her own separate property.

We overrule point of error no. 8.

We affirm.