Opinion issued April 10, 2003
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00685-CV




PATSY GILMORE MOREHEAD, Appellant

V.

MAXIE ERVINE GILMORE; RONA SUE GILMORE REID; JUDITH
EARLE GILMORE CLARK; GEORGE EDWARD GILMORE; SHARON
ELIZABETH GILMORE ROYALL; SANDRA FAYE GILMORE; AND
CANDRA KAY GILMORE, Appellees




On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 1999-60557




MEMORANDUM OPINION

          Appellant, Patsy Gilmore Morehead (Patsy), was sued by seven of her siblings,
appellees, in a dispute over non-probate assets previously held by their deceased
father. The jury found that Patsy agreed to divide all of their father’s money equally,
that Patsy did not divide the money equally, that Patsy breached a fiduciary duty to
each of the seven appellees, and that the amount of damages suffered by each
appellee was $27,800. The trial court entered a judgment on the verdict and awarded
each appellee $27,800.
          In two points of error, Patsy argues that (1) she did not owe appellees a
fiduciary duty as a matter of law; and (2) appellees’ breach of fiduciary duty claim
should not have been permitted since appellees had alternative remedies at law
available to them.
          We affirm.
Facts
          Mr. and Mrs. Gilmore were married in 1933 and raised eight children together. 
Of the eight children, only Patsy and Maxie, her older brother, had an education
beyond high school. Patsy testified at trial that, growing up, her family was very
warm and loving toward each other. 
          Appellees testified that, in the early 1990's, Mrs. Gilmore began to have
memory problems due to Alzheimer’s disease, and Mr. Gilmore’s eyesight and
hearing began to fail. In January of 1993, Mr. and Mrs. Gilmore hired an attorney
who prepared for each of them a will and durable power of attorney. The wills each
provided that all assets would go to the surviving spouse, or, if the spouse did not
survive, the assets were to be divided equally among the eight children. 
          Patsy, the second oldest, was named as the executor in the wills and was
provided with durable power of attorney by both parents. George, a brother of Patsy,
testified at trial that Patsy told him that she would tell him whenever she made any
transactions with regard to their parents’ finances. George also testified that Patsy
told him that their parents wanted George to be involved because he was the second
oldest male, and Maxie, the oldest, was too far away. 
          Starting in 1993, Mr. and Mrs. Gilmore began transferring assets to Patsy. In
January of 1993, Mr. and Mrs. Gilmore executed a deed to their house, transferring
title to Patsy as trustee, while retaining a life estate in themselves. Patsy was named
as joint tenant with rights of survivorship on one of Mr. Gilmore’s CDs in 1994, and
then on another CD in 1998. Mr. Gilmore also named Patsy as joint tenant with rights
of survivorship on two bank accounts opened by Mr. Gilmore. In November of 1998,
Patsy took $61,000 from one of her father’s CDs and put it in her own bank account. 
Patsy testified at trial that Mr. Gilmore had told her that she and her husband could
use the money however they pleased. 
          At a Christmas gathering in 1994, according to appellees’ testimony at trial,
Patsy told appellees that she was going to assist her parents in maximizing their
investments, and that any money that was available at their deaths would be split
equally among the siblings. Pansy Keesee, a friend of Mr. Gilmore’s, testified at trial
that Mr. Gilmore told her that his property was going to be split up equally among the
children, and that “Patsy would be sure of that.” Hazel Boren, also a friend of Mr.
Gilmore, testified at trial that, in 1998, Mr. Gilmore told her that he had worked hard
all of his life and that he indicated that his finances were arranged so that his eight
children would be taken care of. 
          Mrs. Gilmore died in 1998. In 1999, appellees testified that, at Mr. Gilmore’s
birthday party, Patsy asked appellees for consent to sell Mr. Gilmore’s house. 
Everyone agreed to the sale and Patsy sold it for $41,000. Patsy put the proceeds of
the sale in her own checking account. On August 30, 1999, Mr. Gilmore died. Two
days after the funeral, Patsy called a meeting among the siblings to discuss their
father’s estate. Patsy testified that she had intended to divide all of Mr. Gilmore’s
assets equally among the siblings, but that she became upset by the tone of the
meeting and changed her mind. Mr. Gilmore’s gross probate estate had been left with
approximately $11,500. Patsy, however, claimed approximately $286,000 worth of
non-estate assets previously held by Mr. Gilmore, and this suit followed. 
Evidence of a Fiduciary Duty
          In her first issue, Patsy argues that there is no evidence of a fiduciary duty
between her and appellees. 
          In a legal sufficiency challenge, the reviewing court must view the evidence
in a light that tends to support the finding of the disputed fact and disregard all
evidence and inferences to the contrary. Lenz v. Lenz, 79 S.W.3d 10, 13 (Tex. 2002). 
If there is more than a scintilla of evidence, the evidence is legally sufficient to
support the finding. Star Houston, Inc. v. Shevack, 886 S.W.2d 414, 417 n.3 (Tex.
App.—Houston [1st Dist.] 1994, writ denied). 
          Fiduciary relationships are not lightly created. Schlumberger Tech. Corp. v.
Swanson, 959 S.W.2d 171, 176 (Tex. 1997). There are two types of fiduciary
relationships in Texas: (1) a formal fiduciary relationship arising as a matter of law,
such as between partners or an attorney and a client; and (2) an informal or
confidential fiduciary relationship, arising from a moral, social, domestic, or merely
personal relationship where one person trusts in and relies upon another. Crim Truck
& Tractor v. Navistar Int’l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992). The
determination of the existence of a confidential relationship is normally for the trier
of fact. R.R. Street & Co., Inc. v. Pilgrim Enter., Inc., 81 S.W.3d 276, 305 (Tex.
App.—Houston [1st Dist.] 2001, no pet.). 
          A confidential relationship may exist where influence has been acquired and
abused, or where confidence has been reposed and betrayed. Texas Bank & Trust Co.
v. Moore, 595 S.W.2d 502, 508 (Tex. 1980). Where parties have dealt with each
other for a long time, and the parties are justified in expecting the other to act in its
best interest, a fiduciary relationship may exist. R.R. Street, 81 S.W.3d at 305. A
family relationship, while it is considered as a factor, does not by itself establish a
fiduciary relationship. Moore, 595 S.W.2d at 508. In Moore, the court found, as a
matter of law, that a fiduciary relationship existed between a 96-year-old woman and
a nephew that was helping handle her financial affairs. Id. In so holding, the court
stated that when the nephew accepted transfers from his aunt to him as joint tenant
with rights of survivorship, he consented to have his conduct “measured by the
standard of finer loyalties.” Id. 
          At trial, the evidence presented showed that appellant was the sibling of the
seven appellees. George testified that Patsy told him that she was going to keep him
informed about every transaction she made with regard to her parent’s finances, and
that he trusted her to do so. Appellees also testified that, at a Christmas gathering in
1994, Patsy told them that she was assisting their parents in investing their money,
and that it would be split equally at their deaths. Patsy’s sister, Judith, testified that
their father had told her that Patsy was in control of the money, and that when he and
Mrs. Gilmore died, the kids would be able to divide up the money. Appellees
testified that they trusted Patsy to take care of their parents’ money for them. 
          The evidence suggests that Mr. Gilmore and appellees relied on Patsy’s
assertions that she would assist Mr. and Mrs. Gilmore with their finances, and that the
assets were to be managed by Patsy for the benefit of all of the children. We hold
that, in this situation, where the evidence shows that, in a family setting, Patsy
encouraged appellees to rely on her management of their parents’ assets, and where
there is evidence that appellees did rely on Patsy to manage the assets, there is some
evidence of a fiduciary relationship. See Moore, 595 S.W.2d at 507; R.R. Street, 81
S.W.3d at 305. In holding that the testimony at trial amounted to more than a scintilla
of evidence that Patsy had a confidential, fiduciary relationship with appellees, we
accordingly hold that the evidence was legally sufficient to support the jury’s finding
that Patsy owed a fiduciary duty to appellees. 
          We overrule issue one.
Propriety of a Fiduciary Duty Cause of Action
          In her second issue, Patsy argues that appellees should not have been permitted
to bring a claim for breach of fiduciary duty because appellees had other alternative
remedies available at law. 
          Patsy cites some cases suggesting that equitable remedies should not be used
unless legal remedies are unavailable, but cites no Texas case that holds that a breach
of fiduciary duty claim cannot be brought until all available legal remedies have been
exhausted. Further, Patsy failed to bring her objection to appellees’ claim to the
attention of the trial court. Patsy did not object to the fiduciary duty claim being
included in the jury charge, and did not raise the issue in any motions to set aside the
jury’s answers. Accordingly, Patsy has waived her right to complain about the issue
on appeal. See Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993) (“As a rule, a
claim, including a constitutional claim, must have been asserted in the trial court in
order to be raised on appeal.”); Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982). 
          We overrule Patsy’s second issue.
Conclusion
We affirm the trial court’s judgment. 
 

                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.