

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00645-CV

**IN THE ESTATE OF RAYMOND OATMAN WHIPPLE, JR.,** Deceased

From the County Court at Law No. 1, Guadalupe County, Texas
Trial Court No. 2006-PC-0273
Honorable Linda Z. Jones, Judge Presiding

Opinion by: Rebeca C. Martinez, Justice

Sitting: Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: April 17, 2013

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

This is an appeal from a summary judgment granted in favor of John Leslie Whipple, Jr.,

Individually and as Independent Executor of the Estate of Raymond Oatman Whipple, Jr.,

deceased, in a suit alleging claims for fraud in a real estate transaction, conspiracy to commit

fraud in a real estate transaction, breach of fiduciary duty, conversion, and forgery filed by

Richard R. Cash, Independent Executor of the Estate of Phyllis J. Whipple, deceased. We affirm

the judgment of the trial court in part, and reverse and remand in part.

### BACKGROUND

The underlying lawsuit arises from a familial dispute over the transfer of real property

located in Rockport, Texas. Phyllis Whipple, who owned the property in fee simple, conveyed it

to her brother, Raymond Oatman Whipple, Jr. on July 31, 2000 in exchange for $5,570. On the

day of the conveyance, Phyllis's son, Richard Cash, received an e-mail from his cousin, John Leslie Whipple, Jr.,[1] describing a special arrangement involving the property. John's e-mail outlined a plan to reduce Phyllis's assets so she would be eligible for Medicaid benefits and could afford to live in a nursing home. The e-mail indicated Phyllis was to convey the Rockport property to Raymond, who in turn would immediately gift it to Phyllis's other son, Christian Cash. In addition, Phyllis's home in New Braunfels would be rented and the revenue would be used to pay her expenses.

Seven years later, on January 4, 2007, Phyllis died, and Richard became the independent executor of her estate. At that time, Richard learned that Raymond, who died in October 2006, never transferred the Rockport property to Christian Cash as promised in the e-mail. Richard then demanded that John, as independent executor of Raymond's estate, transfer title to the Rockport property to Phyllis's estate or to Christian Cash. John refused, and claimed that the Rockport property belonged to Raymond's estate.

In February 2008, Richard sued John, individually and in his capacity as executor of Raymond's estate, for fraud in a real estate transaction, conspiracy to commit fraud in a real estate transaction, and conversion. Richard alleged that Raymond wrongfully retained the Rockport property and that Phyllis relied upon John's fraudulent representation that the property would subsequently be gifted to Christian in transferring the property to Raymond. He also asserted that John and Raymond conspired to fraudulently induce Phyllis to execute the deed transferring the Rockport property. In regards to the conversion claim, Richard alleged that rental income from the New Braunfels home was wrongfully held by Raymond from June 1, 1997 to July 4, 2006 rather than used for Phyllis's benefit. Richard later amended his petition and added breach of fiduciary duty and forgery claims. He alleged that the conveyance of the

---

[1] John is the son of John Leslie Whipple, Sr., who is the brother of Phyllis, Raymond, and William.

Rockport property was made in trust and that Raymond's failure to gift the property to Christian constituted a breach of Raymond's fiduciary duty owed to Phyllis. Lastly, Richard alleged that the signature of William Whipple, Phyllis's other brother, was forged on an August 2004 general warranty deed to convey property in Guadalupe County to Raymond. William died intestate in November 2004, and without this conveyance, Phyllis's estate would have been entitled to an interest in the Guadalupe County property.

John subsequently moved for summary judgment, but the motion was denied. John then filed a second motion titled "Defendant's Second Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment" in which he alleged that all of Richard's claims were barred by the affirmative defenses of statute of frauds and statute of limitations; he alternatively argued that there was no evidence to support any of Richard's claims. Richard then filed a response and supplemental response to the motion for summary judgment. John, in turn, filed a reply to the response which included objections to Richard's summary judgment evidence on the basis that the documentary evidence was not authenticated.

At the hearing on the summary judgment motion, Richard requested leave to late-file an authenticating affidavit for the evidence in question. The trial court denied Richard's request; however, the trial court did not expressly rule on John's authentication objections and took the matter of summary judgment under advisement. The trial court later granted John's second motion for summary judgment in its entirety without specifying the grounds for the decision. Richard now appeals.

## ANALYSIS

As a preliminary matter, Richard contends that we should consider all of his proffered summary judgment evidence because John did not obtain a ruling on his objections to the summary judgment evidence. In response, John maintains the trial court implicitly excluded the

objectionable evidence when it refused to admit the authenticating affidavit that Richard attempted to file the day of the hearing.

A complaint is preserved for appellate review if the record shows a timely objection was made, and the trial court ruled either expressly or implicitly on the complaint. *See* TEX. R. APP. P. 33.1(a); *Doncaster v. Hernaiz*, 161 S.W.3d 594, 601 (Tex. App.—San Antonio 2005, no pet.). Here, John did not obtain an express ruling. There is no evidence in the record indicating the trial court sustained John's objection as to the authentication of the seven items of summary judgment evidence.[2] In fact, the record shows the trial court, at the close of the hearing, stated, "Okay. I'm going to take it under advisement. I'm going to review everything." Such statements do not imply the trial court previously decided to either admit or exclude the contested summary judgment evidence. Thus, an implicit ruling that the trial court excluded the contested summary judgment evidence cannot be derived merely from the trial court's decision to exclude the proffered affidavit. *See Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex. App.—San Antonio 2000, no pet.) ("A ruling is implicit if it is unexpressed but capable of being understood from something else."). In addition, an implicit ruling cannot be ascertained from the trial court's decision to grant John's motion for summary judgment. *See id.* at 317 ("[A] trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment; a ruling on the objection is simply not 'capable of being understood' from the ruling on the motion for summary judgment."). Thus, given that John failed to obtain either an express or implicit ruling on his objections, we will consider all of Richard's proffered summary judgment evidence.

---

[2] John objected to the following items of evidence for lack of authentication: (1) Exhibit A: an e-mail sent from John to Richard dated July 31, 2000; (2) Exhibit I: affidavit of handwriting expert and related documents; (3) Exhibit 1: financial records from Eden Home; (4) Exhibit 2: affidavit of Richard R. Cash; (5) Exhibit 5: a letter from the property manager of Phyllis's New Braunfels home; (6) Exhibit 6: a lease receipt for the Rockport property; and (7) Exhibit 7: a printout of a blog post from whippleworld.com dated November 4, 2005.

**TRADITIONAL SUMMARY JUDGMENT**

Because the trial court did not specify the grounds relied upon to render summary judgment, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *See Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 806 (Tex. 2009); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). To prevail on a summary judgment motion brought under Texas Rule of Civil Procedure 166a(c), a movant must show there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In his motion for traditional summary judgment, John raised the affirmative defense of statute of frauds against the fraud, conspiracy, and breach of fiduciary duty claims as well as a statute of limitations affirmative defense against all five of Richard's claims.

***Standard of Review***

We review an order of summary judgment de novo. *Fielding*, 289 S.W.3d at 848. "We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *See id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). Where, as here, a party moves for summary judgment on the grounds of an affirmative defense, the movant must expressly present and conclusively prove each essential element of the affirmative defense. *Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.). Once the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.—Dallas 2008, no pet.). If the nonmovant fails to create a fact issue, summary judgment is appropriate.

### A. Statute of Frauds

John raised the affirmative defense of statute of frauds in regard to the fraud, conspiracy, and breach of fiduciary duty claims related to the Rockport property. *See* TEX. R. CIV. P. 94 (statute of frauds is an affirmative defense). He argued that a secondary transfer of the Rockport property would have been a part of the sale of the land to Raymond, which, to be enforceable, requires a writing signed by the person to be charged with the agreement. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (West 2009); *see also* TEX. PROP. CODE ANN. § 5.021 (West 2004) (conveyance of land must be in writing and must be subscribed and delivered by the conveyor). The statute of frauds is designed to prevent fraud by requiring that certain agreements be put in writing and signed by the parties. *See Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); *see also Tolle v. Sawtelle*, 246 S.W.2d 916, 919 (Tex. Civ. App.—Eastland 1952, writ ref'd) (holding a parol agreement to convey land cannot be enforced).

Richard responds that the alleged agreement reflected in the July 31, 2000 e-mail creates a fact question as to whether a constructive trust was created, which is an exception to the statute of frauds' writing requirement. *See* TEX. PROP. CODE ANN. § 111.003 (West 2007) (providing that a constructive trust is not subject to the Texas Trust Code). Richard argues that a fiduciary relationship existed between Raymond and Phyllis and that, when Raymond purchased the Rockport property for his own benefit, he abused that relationship; thus, a constructive trust in favor of Phyllis was created. *See Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951).

"A constructive trust is an equitable remedy to prevent unjust enrichment." *In re Estate of Melchior*, 365 S.W.3d 794, 800 (Tex. App.—San Antonio 2012, pet. denied); *Baker Botts, L.L.P. v. Cailloux*, 224 S.W.3d 723, 736 (Tex. App.—San Antonio 2007, pet. denied). "When the legal title to property has been obtained through means that render it unconscionable for the holder of legal title to retain the beneficial interest, equity imposes a constructive trust on the

property in favor of the one who is equitably entitled to the same." *Medford v. Medford*, 68 S.W.3d 242, 249 (Tex. App.—Fort Worth 2002, no pet.), overruled on other grounds by *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314 (Tex. 2012). To establish a constructive trust, the proponent must prove (1) the breach of a special trust or fiduciary relationship or actual fraud; (2) the unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied).

An informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998); *Hubbard*, 138 S.W.3d at 483. The relationship must exist prior to, and apart from, the agreement that is the basis of the suit. *Hubbard*, 138 S.W.3d at 483. In other words, there must be a preexisting special relationship of trust and confidence that is betrayed in later dealings. *Id.* A fiduciary duty may arise from an informal relationship "'where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or purely personal one.'" *Fitz-Gerald*, 237 S.W.2d at 261; *Young v. Fawcett*, 376 S.W.3d 209, 214 (Tex. App.—Beaumont 2012, no pet.). Specifically, family relationships—where a person trusts in and relies upon a close member of her core family unit—may give rise to a fiduciary duty when equity requires. *Young*, 376 S.W.3d at 214; *see also Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 986–89 (1948) (mother-son fiduciary relationship). "When the societal relationship is one of loving family members or close personal friends, the justification for and reasonableness of reposing trust one in the other is readily understandable." *Young*, 376 S.W.3d at 214 (quoting Roy Ryden Anderson, *The Wolf at the Campfire: Understanding Confidential Relationships*, 53 SMU L. REV. 315, 366 (2000)). Factors that may be considered in determining whether a confidential relationship existed include whether the

plaintiff relied on the defendant for support, the plaintiff's advanced age and poor health, and evidence of the plaintiff's trust. *See Young*, 376 S.W.3d at 215; *Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex. App.—Amarillo 2002, no pet.).

As evidence of the fiduciary relationship between Phyllis and her brother Raymond, Richard points to the July 31, 2000 e-mail which provides, in part: "I don't know if you've been talking to your Mom or Chris about [Phyllis's] situation. She's had a couple of 'mini-strokes' and whereas she was having a hard time getting around for the last couple of years, she can't really walk by herself at all now. For a long time Raymond has been taking care of her but it looks like she needs to be in a nursing home to get the special care that will help her."

We agree that this evidence raises a fact issue as to whether a confidential relationship existed between Phyllis and Raymond. The record shows that Phyllis was elderly and immobile and in need of living assistance when John and Raymond made arrangements to transfer her assets. As to the second and third elements necessary to impose a constructive trust, Richard provided some evidence that Raymond was unjustly enriched by keeping the Rockport property instead of transferring it to Christian as promised. Because Richard has provided some evidence of each element of a constructive trust, we hold that a genuine issue of fact exists as to whether Phyllis was entitled to the imposition of a constructive trust. We therefore conclude that John failed to show he was entitled to summary judgment on Richard's fiduciary-duty-based claims based on the statute of frauds. *See Anderton v. Cawley*, 378 S.W.3d 38, 63 (Tex. App.—Dallas 2012, no pet.) (statute of frauds is not a defense to an action for damages for breach of fiduciary duty); *Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 461 (Tex. App.—Dallas 1988), writ denied, 778 S.W.2d 865 (Tex. 1989) (per curiam) (same). Because John failed to establish his affirmative defense of the statute of frauds as a matter of law, Richard's claims related to the Rockport property, including fraud in a real estate transaction, conspiracy to commit fraud in a

real estate transaction, and breach of fiduciary duty, are not barred by the statute of frauds and John was not entitled to summary judgment on that basis.

## B. Statute of Limitations

John also moved for summary judgment on the basis of statute of limitations against all five of Richard's claims. To prevail on his traditional motion for summary judgment on this affirmative defense, John had the burden of proving when the cause of action accrued for each claim and negating the discovery rule. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *In re Estate of Melchior*, 365 S.W.3d at 798–99; *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 376 (Tex. App.—Dallas 2009, pet. denied) (op. on reh'g). "[T]he discovery rule operates to defer accrual of a cause of action until a plaintiff discovers or, through the exercise of reasonable care and diligence, should discover the 'nature of his injury.'" *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998). In order to negate the discovery rule, John must prove as a matter of law that there is no genuine issue of material fact as to when Richard discovered, or in the exercise of reasonable diligence should have discovered, the alleged injuries. *See KPMG Peat Marwick*, 988 S.W.2d at 748. We must thus determine whether John conclusively proved when the cause of action accrued for each of Richard's claims.

### i. Conversion

Richard alleged that rental income from Phyllis's New Braunfels home was wrongfully converted by Raymond and John from June 1, 1997 through July 4, 2006. Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971); *Wells Fargo Bank Northwest, N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 699 (Tex. App.—Dallas 2012, no pet.). To establish

conversion, a plaintiff must prove that (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *See Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 344 (Tex. App.—San Antonio 2000, pet. denied); *Augillard v. Madura*, 257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.). The plaintiff must also establish he was injured by the conversion. *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1994) (per curiam); *Wells Fargo Bank Northwest*, 360 S.W.3d at 699.

A conversion claim must be filed within two years of the unlawful taking. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2012); *In re Estate of Melchior*, 365 S.W.3d at 798. Limitations begins to run when a cause of action accrues, and the date of accrual is a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). A cause of action generally accrues when "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *Moreno*, 787 S.W.2d at 351.

Here, John failed to conclusively establish whether the limitations period began to run from the initial alleged conversion—on June 1, 1997—or from each monthly conversion so that a claim for unlawful takings between February 19, 2006 and July 4, 2006 would not be barred.[3] The date of accrual is a question of law. *See Melchior*, 365 S.W.3d at 799. A cause of action for conversion of money may accrue with each monthly payment of overcharges. *See Tanglewood Terrace, Ltd. v. City of Texarkana*, 996 S.W.2d 330, 337 (Tex. App.—Texarkana 1999, no pet.).

---

[3] Richard filed his lawsuit on February 19, 2008.

Therefore, we conclude that Richard's conversion claim based on unlawful takings from February 19, 2006 to July 4, 2006 survives the statute of limitations. *See id.*

ii. <u>Forgery</u>

Richard claimed that William Whipple's signature was forged on a general warranty deed that conveyed his interest in property in Guadalupe County to Raymond; without this conveyance, Phyllis would have been entitled to an interest in the property as an heir to William's estate. The deed is dated August 19, 2004 but was not recorded until December 2006. A forgery claim is subject to a four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008) (specifying four-year time limit for every action for which there is no express limitations period); *Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 686 (Tex. App.—Amarillo 1998, pet. denied). Richard filed the forgery claim in his first amended petition on November 10, 2010. In response to John's motion for summary judgment, Richard argued that the forged deed was not discovered until Raymond's will was presented for probate after his death on October 23, 2006.

John had the burden of conclusively proving when the cause of action accrued and to negate the discovery rule. *See KPMG*, 988 S.W.2d at 748; *Howard v. Fiesta Tex. Show Park, Inc.*, 980 S.W.2d 716, 719 (Tex. App.—San Antonio 1998, pet. denied) ("defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must negate the plaintiff's assertion of the discovery rule by proving that as a matter of law, it does not apply or that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury"). Here, John did not prove when the forgery cause of action accrued—whether it was at the time the deed was signed or recorded, or whenever else the forgery should have reasonably been discovered. Further, John failed to specifically negate the discovery rule. Because a fact question exists regarding when the statute

of limitations began to run, we conclude the trial court erred in granting summary judgment on the forgery claim based on the affirmative defense of statute of limitations.  *See Howard*, 980 S.W.2d at 719.

### iii.    Claims Related to the Rockport Property

Richard's claims for fraud in a real estate transaction, conspiracy to commit fraud in a real estate transaction, and breach of fiduciary duty are subject to a four-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a) (West 2002).  In his motion for summary judgment, John argued that these claims all stemmed from the July 31, 2000 conveyance, and were therefore barred by the statute of limitations.  He further argued that the discovery rule did not apply because Phyllis and her family were aware of the conveyance to Raymond as part of her Medicaid planning and were also aware that the property was not subsequently transferred to Christian, yet despite this knowledge they never raised the issue until the 2008 lawsuit was filed.

In his response, Richard asserted he did not know, nor should have known, of the acts and omissions of Raymond and John prior to the date his mother died on January 4, 2007 and he became the executor of her estate.  He contended that prior to his mother's death, he lacked standing and authority to act, and was not put on notice to investigate the acts and omissions of his uncle and his cousin.  He further argued that Phyllis was physically unable to investigate Raymond's acts because she was immobile and confined to a nursing home.

An action for fraud accrues upon the perpetration of the fraud, or if the fraud is concealed, when it is discovered or, through the exercise of reasonable diligence, should have been discovered. *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Pooley v. Seal*, 802 S.W.2d 390, 393 (Tex. App.—Corpus Christi 1990, writ denied).  In his affidavit attached to the supplemental response to John's motion for summary judgment, Richard states that his mother suffered a stroke in June 2000 and was debilitated and immobile.  After receiving

the e-mail from John, Richard spoke with Raymond, who affirmed the statements made by John regarding the transfer of the Rockport property to Christian and that the proceeds would be provided to Phyllis and ultimately her estate upon her death; Raymond stated that he and John were working together for the benefit of and in the interest of Richard's mother. Richard further states, "I learned on or near her death, that Raymond and John failed to do as represented and that funds and other property had been diverted to their personal use instead of presented to my mother's benefit or her estate."

No summary judgment evidence proves that Richard discovered or should have discovered the alleged fraud more than four years before filing suit. The summary judgment evidence shows it was only after Phyllis died and Richard became executor of her estate that he discovered the fraud. Thus, John has not shown that limitations bar the real estate fraud causes of action pleaded by Richard. Because John did not conclusively prove each element of his affirmative defense of statute of limitations, and because Richard raised a fact issue regarding an exception to John's affirmative defense of the statute of frauds, we conclude that summary judgment on John's traditional motion was improper.

**NO-EVIDENCE SUMMARY JUDGMENT**

We next review the no-evidence grounds asserted in John's motion for summary judgment.

### *Standard of Review*

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Timpte Inds., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion.

TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.).

## A. Evidence

John moved for no-evidence summary judgment on all of Richard's claims. Richard argues that the summary judgment evidence he presented in his response to the motion for summary judgment, as well as his supplemental response, is more than a scintilla of probative evidence to raise issues of genuine material fact on all his claims.

### 1. *Conversion*

John's no-evidence motion with respect to the conversion claim provided:

Plaintiff can provide no evidence that Defendant or Raymond Whipple exercised dominion and control over the property of Phyllis Whipple to the exclusion of and inconsistent with her rights. Plaintiff also cannot prove that any demand was ever made for the property which is the subject of the conversion claim to defendant or Raymond Whipple, nor that either of them refused to return such property. Plaintiff provides no evidence that funds he claims to have been converted were even received by or in the possession of Defendant, nor does he have evidence that such funds were not used for the support of Phyllis Whipple.

The evidence Richard points to in support of his conversion claim includes Phyllis's nursing home records, which show funds withdrawn from her account, and a letter from a property management company stating that the $695 in monthly rental income generated from Phyllis's New Braunfels home was sent to John. Richard offers no evidence showing that the

rental income was not used to pay for Phyllis's expenses, or that funds withdrawn from Phyllis's account were also not used to pay for her expenses; nor does he provide evidence of who was removing the funds. Thus, we conclude the trial court did not err in granting summary judgment on the conversion claim because Richard's evidence fails to amount to more than mere suspicion that Raymond unlawfully took Phyllis's funds for his own personal use.

### 2. *Forgery*

John moved for judgment on the forgery claim on the following basis:

> Plaintiff has absolutely no evidence to claim that the deed from William Whipple to Raymond Whipple was a forgery. This deed was signed by William Whipple in the presence of both John Leslie Whipple, Jr. and his wife, Jimmie Whipple, and was then delivered in person by William to Raymond. *See* John Whipple Affidavit and Jimmie Whipple Affidavit. Plaintiff has no evidence of a forgery. This was a valid conveyance of land by William to Raymond.

In response, and in support of his forgery claim, Richard offered the following evidence: (1) an affidavit with supporting documentation from a handwriting expert who analyzed and compared William's signature to the deed in question and determined it to be forged; (2) the deed in question; and (3) John's deposition in which he testifies that the deed was not recorded until December 2006. Viewing this evidence in the light most favorable to Richard, the non-movant, we conclude it amounts to more than mere suspicion that William's signature was forged on the Guadalupe County deed, and thus a genuine issue of material fact exists on Richard's forgery claim.

### 3. *Breach of Fiduciary Duty*

John moved for no-evidence summary judgment on the breach of fiduciary duty claim as follows:

> Plaintiff has no evidence to prove his claims for an alleged breach of fiduciary duty. First, there is no evidence of a fiduciary relationship existing between Plaintiff's mother, Phyllis Whipple, and either Defendant or Raymond Whipple at the time of the conveyance of the land by Phyllis to Raymond. Second, there is

no proof of breach of any such relationship, and third Plaintiff can show no harm to Phyllis Whipple as a result.

As we have already discussed, there is some evidence in the record to support the existence of a fiduciary relationship between Raymond and Phyllis at the time of the property conveyance.  There is also some evidence that Raymond breached that relationship by failing to transfer the Rockport property to Christian as promised, and that Phyllis was harmed when her estate did not receive proceeds owed to her.  Accordingly, we conclude the trial court erred in granting summary judgment on this claim.

### 4.  *Fraud in a Real Estate Transaction and Conspiracy to Commit Fraud*

John moved for no-evidence summary judgment on the fraud in a real estate transaction and conspiracy to commit fraud claims as follows:

> Plaintiff has no evidence of fraud in relation to the transaction upon which he bases his claim of fraud and conspiracy to commit fraud in a real estate transaction.  He specifically has no evidence that a false representation of a past or existing material fact was made for the purpose of inducing Phyllis Whipple to convey land to Raymond Whipple on July 31, 2000, and that such alleged false representation was relied on in making that conveyance.  There was no fraud or conspiracy to commit fraud with regard to this real estate transaction . . . , as Mrs. Whipple had full knowledge of the transfer during her life.

To prove statutory fraud in a real estate transaction, a plaintiff must show: (1) a false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing the person to enter into a contract and (B) relied on by that person in entering into that contract; or (2) a false promise to do an act, when the false promise is (A) material, (B) made with the intention of not fulfilling it, (C) made to a person for the purpose of inducing that person to enter into a contract, and (D) relied on by that person in entering into that contract.  TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009).  Like common-law fraud, the plaintiff's reliance in statutory fraud must be justifiable.  *TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 674 (Tex. App.—Austin 2002, no pet.).

A civil conspiracy consists of two or more persons combining to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The essential elements of conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.*

In response, Richard attached the July 31, 2000 e-mail from John to Richard as well as the deed from Phyllis to Raymond. Further, Richard attached his affidavit to the supplemental response, in which he states that he and his family relied on the statements made in the e-mail in deciding to convey the property to Raymond. This evidence raises a fact issue as to whether John promised that the Rockport property would be transferred to Christian in order to induce Phyllis to convey the Rockport property to Raymond. Thus, the trial court erred in granting summary judgment on Richard's claim for fraud in a real estate transaction. This evidence does not, however, raise a fact issue on the conspiracy claim. Richard does not point to any evidence to support his claim that John and Raymond conspired to take Phyllis's property from her. Accordingly, summary judgment on the conspiracy claim was proper.

## CONCLUSION

Based on the foregoing, we reverse the portion of the trial court's order granting summary judgment on Richard's claims for forgery, breach of fiduciary duty, and fraud in a real estate transaction, and we remand the case to the trial court for further proceedings with respect to those claims. In all other respects, the judgment of the trial court is affirmed.

Rebeca C. Martinez, Justice