**Affirmed and Opinion Filed April 26, 2022**



**In the**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00006-CV**

**CYNTHIA RAMOS, Appellant**
**V.**
**DOMINGO H. CISNEROS, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-00429**

## MEMORANDUM OPINION

Before Justices Schenck, Carlyle, and Garcia
Opinion by Justice Carlyle

Domingo H. Cisneros[1] filed this lawsuit against his daughter Cynthia Ramos seeking to recover title to his home from Ms. Ramos and prevent her from evicting him. The trial court granted Mr. Cisneros's motion for summary judgment against Ms. Ramos, which she challenges in this appeal. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

---

[1] Mr. Cisneros died after this appeal was filed but before this case was disposed of on appeal. We "proceed to adjudicate the appeal as if all parties were alive." *See* TEX. R. APP. P. 7.1(a)(1).

## Background

Mr. Cisneros filed this lawsuit on January 9, 2020. At that time, he was 80 years old and lived in a Dallas house he had purchased about one and one-half years earlier. His wife had died the previous year at age 79. They had eight children together, including Ms. Ramos.

The petition alleged (1) Mr. Cisneros "has various medical conditions which make it difficult for him to live by himself, including sporadic memory impairment, high blood pressure and related problems"; (2) following his wife's death, Ms. Ramos "promised Plaintiff that if he gave her a deed to his house, that she would care for him and let him live in his home, comfortable and undisturbed, for the rest of his life, and provide him the care and companionship that he needed"; (3) on April 4, 2019, Mr. Cisneros "executed a deed to Defendant, reserving a life estate in his home"; (4) the deed "was executed for no consideration, and was instead induced by fraud, false promises, and due to the special relationship of trust and confidence that he had with Defendant"; (5) shortly after that, Ms. Ramos "falsely represented to Plaintiff that she was unable to obtain insurance on the home unless the title was solely in her name" and she "began again pressuring Plaintiff to execute another deed, granting her full title to the house"; (6) "acting under the false promises and fraudulent representations of Defendant, and in reliance upon the relationship of trust and confidence that he had in his daughter, based upon their special relationship, and the promises and assurances of his daughter, Plaintiff executed a second deed to

Defendant on May 6, 2019"; (7) Ms. Ramos "shortly began refusing to cook for him, provide groceries for him, or treat him with the love and respect due to an aging parent"; and (8) "[s]ubsequent to securing conveyance of Plaintiff's homestead through fraud, artifice, deceit, and exercise of undue influence, Cynthia Ramos . . . engaged in malicious and harassing conduct designed to intimidate and frighten her father into abandoning his home to allow her to consummate her unlawful theft thereof" and filed a proceeding to evict Mr. Cisneros from the house.

Mr. Cisneros asserted claims for (1) "breach of fiduciary duty and imposition of constructive trust," (2) "trespass to try title," and (3) declarations that the two deeds are "invalid and unenforceable" and he is "owner of 100% of the fee simple interest" in the property. He also sought temporary and permanent injunctive relief, monetary damages, and attorney's fees.

Following the March 12, 2020 issuance of citation, Ms. Ramos's counsel filed a March 18, 2020 "Notice of Appearance" but did not file an answer at that time.

On July 23, 2020, Mr. Cisneros filed a traditional motion for summary judgment, contending the evidence established "the existence of a relationship of trust and confidence" between him and Ms. Ramos based on their family relationship and other circumstances. He asserted Ms. Ramos breached that fiduciary relationship by "attempting to evict him and continuing to harass him, rather than giving him love, comfort, and support," thus warranting "imposition of a constructive trust" in his favor.

The evidence attached to the summary judgment motion included (1) a declaration of Mr. Cisneros with the two deeds attached, (2) his above-described petition, and (3) July 2020 deposition testimony of Atalia Garcia-Williams, the attorney who prepared the two deeds.

The summary judgment motion's August 2020 Zoom hearing was reset for September 28, 2020, so the parties could proceed with mediation, but they did not settle the case. On September 25, 2020, Ms. Ramos filed (1) objections to Mr. Cisneros's summary judgment evidence, (2) a motion to continue the summary judgment hearing, and (3) a motion for leave to file a late summary judgment response, with the proffered response and evidentiary exhibits attached. Mr. Cisneros opposed both motions. Additionally, Ms. Ramos filed a September 28, 2020 general denial answer, which Mr. Cisneros moved to strike as untimely.

The trial court moved the summary judgment motion to its September 29, 2020 "submission docket" and did not hold a Zoom or in-person hearing. The trial court signed a September 30, 2020 order stating that having considered, among other things, the motion and "the unopposed pleadings on file," it was granting Mr. Cisneros's summary judgment motion, and "[t]rial for determination of damages, if any, to be awarded to Plaintiff shall be set by the Court." Mr. Cisneros moved to nonsuit his monetary relief claims and requested entry of final judgment. The trial court granted his motion for partial nonsuit and, several months later, signed a final judgment that stated:

The Court finds that prior to the total conveyance of [the property] to Defendant, there existed, as a matter of law, a confidential relationship of trust and confidence that Plaintiff had toward his daughter, the Defendant herein, and Plaintiff was justified in relying upon the promises and assurances of his daughter in dealing with the Property.

The Court further finds that the Defendant promised and represented to Plaintiff that, if he conveyed his home to her, she would allow him to reside in his home for the remainder of his life, and that Defendant would provide care, support, love, and companionship for him in his aging years, but that in fact the Defendant did not intend to fulfill such promise and agreement at the time made, and Plaintiff justifiably relied upon such promise to his material detriment.

The Court further finds that the representation of Defendant to Plaintiff that she was unable to obtain insurance on the Property unless he relinquished his life estate in the Property was false and fraudulent as a matter of law.

Since Defendant owed a fiduciary duty to Plaintiff, and paid nothing for conveyance of the home, Defendant bears the burden of proving the fairness of all transactions with Plaintiff.

Defendant has breached her fiduciary duties to Plaintiff.

The judgment imposed a constructive trust on the property for Mr. Cisneros's benefit and stated the trial court "finds and declares" that the two deeds are "void and unenforceable."

Ms. Ramos filed a motion to reconsider the granting of summary judgment and the "implied orders denying Defendant's September 25, 2020 motions." After a hearing, the trial court denied that motion.

### Standard of review

We review a traditional summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied). The movant has the burden

to show no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant is taken as true. *In re Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). Where the trial court's order does not specify the grounds for its summary judgment, we affirm if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017).

"A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c). We review a ruling on the admissibility of evidence for abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020) (per curiam).

**Analysis**

In her first issue, Ms. Ramos contends the trial court erred by granting Mr. Cisneros's summary judgment motion, and we address her arguments in turn.

*The trial court did not misapply traditional summary judgment standards*

We disagree with Ms. Ramos that the record shows the trial court "granted summary judgment by default" based "solely on the lack of a timely summary judgment response." Though the trial court mentioned "the unopposed pleadings on file" in its September 30, 2020 order, nothing in the record shows the trial court granted the summary judgment by "default" without considering the evidence attached to the motion.

We also disagree that the trial court granted unrequested relief. The petition's "breach of fiduciary and imposition of constructive trust" claim specifically requested "a decree declaring the deeds previously executed to Defendant to be void and of no force and effect." The summary judgment motion incorporated the petition by reference and requested summary judgment regarding that claim.

*Deficiencies in Mr. Cisneros's proof did not defeat his right to judgment as a matter of law*

Ms. Ramos's objection that Mr. Cisneros's declaration contained "numerous statements that cannot be easily controverted" did not specify any particular statements. Thus, we cannot agree the trial court abused its discretion by not granting that objection. *See City of Dallas v. Rodriguez*, No. 05-19-00045-CV, 2020 WL 1486831, at *3 (Tex. App.—Dallas Mar. 27, 2020, no pet.) (mem. op.) (objections to affidavit must be sufficiently specific).

Ms. Ramos's remaining admissibility objections pertain to the alleged "conclusory" nature of the complained-of statements. "A conclusory statement is

one that does not provide the underlying facts to support the conclusion." *Bastida v. Aznaran*, 444 S.W.3d 98, 105 (Tex. App.—Dallas 2014, no pet.). Conclusory statements in affidavits are not competent evidence to support the grant of summary judgment because they are neither credible nor susceptible to being readily controverted. *Id*.

Here, Ms. Ramos asserts (1) Mr. Cisneros's "self-serving declarations that he had a 'relationship of love and affection' for his children and that 'because Cynthia was [his] daughter, [he] felt the natural love, affection, trust, and confidence that parents usually place in their children'" are "conclusory recitations" of the legal standard and are incontrovertible, and (2) "[b]ecause Appellant cannot offer controverting evidence on her father's state of mind, none of his self-serving testimony should be considered when establishing whether a special relationship of trust and confidence existed." Additionally, Ms. Ramos argues, "The deposition testimony of the lawyer who drafted the deed doesn't help Mr. Cisneros, either. There is no evidence that [Ms. Garcia-Williams] had the personal knowledge to swear that 'He trusted her.' Nor did she offer any underlying facts sufficient to support her conclusory statement."

Though Ms. Ramos describes particular statements as conclusory, other portions of the summary judgment evidence to which she did not object provide the necessary underlying factual support. Mr. Cisneros's declaration described Ms. Ramos as his "loyal and loving daughter" whom he "trusted and relied upon" as he

was struggling with health issues and devastated by his wife's death. His declaration stated he and Ms. Ramos discussed and agreed that if he transferred his home to her, "she would live there with me and care for me, providing food, comfort, companionship, and support for the rest of my life," and she made "express promises of comfort, affection, and support" to that effect. Both Mr. Cisneros and Ms. Garcia-Williams described a "custom in the Hispanic community for a child to live with a widowed parent after the loss of one parent, caring for the surviving parent, for the remainder of his/her life, and then to inherit the homestead after the surviving parent passes away," which Ms. Ramos states in her appellate brief is a "tradition in the Hispanic community." Additionally Ms. Garcia-Williams testified (1) Mr. Cisneros told her in the presence of Ms. Ramos and other family members that he wanted to give the house to Ms. Ramos and they had agreed he was going to "stay with Cynthia" and "live there for the rest of his life," and (2) Ms. Ramos "was okay with" that. Thus, the declaration and deposition testimony furnished a factual basis for the statements regarding "trust and confidence." *See Rivera v. White*, 234 S.W.3d 802, 808 (Tex. App.—Texarkana 2007, no pet.) (concluding affiant's statements furnished underlying factual support and thus were not merely conclusory and could support summary judgment); *see also Rodriguez v. Citibank, N.A.*, No. 04-12-00777-CV, 2013 WL 4682194, at *3 (Tex. App.—San Antonio Aug. 30, 2013, no pet.) (mem. op.) ("logical conclusions based on stated underlying facts within the affidavit or attachments thereto are not improper conclusions and are probative").

*Mr. Cisneros showed entitlement to summary judgment*

To prevail on a claim for breach of fiduciary duty, the claimant must prove the existence of a fiduciary duty, a breach of that duty by the defendant, causation, and damages. *Morrell v. Morrell*, No. 09-20-00086-CV, 2022 WL 959943, at *15 (Tex. App.—Beaumont Mar. 31, 2022, no pet. h.) (citing *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017)). A fiduciary owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability. *Avary v. Bank of. Am., N.A.*, 72 S.W.3d 779, 791 (Tex. App.—Dallas 2002, pet. denied). A party fails to comply with its fiduciary duty "where influence has been acquired and abused, and confidence has been reposed and betrayed." *Lee v. Hasson*, 286 S.W.3d 1, 14–15 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A profiting fiduciary bears the burden of showing the fairness of transactions between the fiduciary and the party to whom she owes a duty. *Id*. at 21; *see Morrell*, 2022 WL 959943, at *15 (when plaintiff alleges self-dealing as part of breach-of-fiduciary-duty claim, "a presumption of unfairness arises, which the fiduciary bears the burden to rebut").

Though the existence of a confidential relationship is generally a question of fact, when the underlying facts are undisputed, the existence and breach of a fiduciary duty are questions of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). "The existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved." *Morrell*, 2022 WL

959943, at *16 (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)). "In reviewing the relationship between the parties, factors we consider include the plaintiff's advanced age and poor health and whether the plaintiff justifiably placed special confidence in the other party to act in her best interest." *Id*. Subjective trust by one party in another does not establish the requisite relationship. *Caserotti v. State Farm Ins. Co*., 791 S.W.2d 561, 565 (Tex. App.—Dallas 1990, writ denied). "To impose an informal fiduciary relationship in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 330.

As to the existence of a fiduciary duty, Ms. Ramos argues there is "no competent summary judgment evidence that Appellant had a pre-existing relationship or pattern of trust and confidence with her father," nor is there "any evidence indicating that Ms. Ramos recognized that her father was relying on her." She contends "the evidence showed that Mr. Cisneros's love and affection was a one-way street" and "[n]one of the evidence showed that the relationship was mutual and understood as such by both parties." According to Ms. Ramos,

> Here, Plaintiff's summary judgment evidence would permit reasonable minds to conclude or infer that he deeded the house to his daughter not because of any special relationship of trust and confidence, but instead because of Hispanic custom, because of a promise he made to his wife, or because of a promise Appellant made to her mother before she passed away.

She argues that "[i]f anything, Mr. Cisneros's evidence raised fact issues all by itself" and "[t]hus, the burden never shifted to Ms. Ramos."

"An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic or merely personal one." *Morrell*, 2022 WL 959943, at *16 (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176 (Tex. 1997)). "A person's trust and reliance upon a close member of her core family unit may give rise to a fiduciary duty when equity requires." *Id*. at *15 (citing *Young v. Fawcett*, 376 S.W.3d 209, 214 (Tex. App.—Beaumont 2012, no pet.)). "Where one person is accustomed to being guided by the judgment or advice of another or is justified in believing one will act in the best interest of another because of a family relationship, a confidential relationship may arise." *Id*. (quoting *Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex. App.—Amarillo 2002, no pet.)).

As described above, Mr. Cisneros's declaration (1) described Ms. Ramos as his "loyal and loving daughter" whom he "trusted and relied upon" as he was struggling with health issues and devastated by his wife's death and (2) stated Ms. Ramos made "express promises of comfort, affection, and support" and he made the transfer "in reliance upon the close relationship of trust and confidence that I had in her as my loyal and loving daughter, and based upon her promises and reassurance that if conveyed the house to her, that I would not be disturbed in my continued residence in the house for the remainder of my life, and would have the care,

–12–

comfort, and companionship that I needed and desired in my aging years." At the attorney's office, Mr. Cisneros described his agreement with Ms. Ramos in her presence and Ms. Ramos "was okay with" that. We conclude Mr. Cisneros's summary judgment evidence conclusively showed the parties had a relationship of trust and confidence before entering into the agreement in question and Ms. Ramos was aware her father was relying on her promises. *See id*. at *16 (factors to be considered in reviewing parties' relationship include "plaintiff's advanced age and poor health and whether the plaintiff justifiably placed special confidence in the other party to act in [plaintiff's] best interest"); *In re Whipple*, No. 04-11-00645-CV, 2013 WL 1641414, at *4 (Tex. App.—San Antonio Apr. 17, 2013, pet. denied) (mem. op.) ("Factors that may be considered in determining whether a confidential relationship existed include whether the plaintiff relied on the defendant for support, the plaintiff's advanced age and poor health, and evidence of the plaintiff's trust." (citing *Young*, 376 S.W.3d at 215)).

*Ms. Ramos's summary judgment response and evidence did not "negate[] or present[] fact questions on the existence of a special relationship, breach of fiduciary duty, and fairness"*

Ms. Ramos cites affidavits attached to her summary judgment response in which (1) she testified that her father "stated that he wanted to make this gift because his other children had homes already and because in his own words 'this is what momma wanted'" and (2) her sister Margarita Amaro testified that "on April 11, 2019, [Mr. Cisneros] executed a Statutory Durable Power of Attorney designating

–13–

me as his attorney in fact for all of his financial and property transactions." But even with every reasonable inference indulged in Ms. Ramos's favor, the evidence she cites does not address or controvert the special relationship of trust and confidence Mr. Cisneros's evidence conclusively demonstrated.

As to breach, Ms. Ramos asserts "the trial court's summary judgment order made two fact findings to establish breach of fiduciary duty: (1) that Ms. Ramos, by initiating eviction proceedings against Mr. Cisneros, broke her promise to allow him 'to reside in his home for the remainder of his life, and that Defendant would provide care, support, love, and companionship for him in his aging years;' and that (2) 'the representation of the Defendant to plaintiff that she was unable to obtain insurance on the home unless he relinquished his life estate was false and fraudulent as a matter of law.'"[2] Her appellate arguments regarding Mr. Cisneros's failure to conclusively prove breach focus solely on those two "findings."

Because of the parties' informal fiduciary relationship, Ms. Ramos bore the burden to rebut the presumption of unfairness. *See Lee*, 286 S.W.3d at 21; *Morrell*, 2022 WL 959943, at *15. "Such fiduciaries must prove they acted in good faith and that the transactions were fair, honest, and equitable." *Lee*, 286 S.W.3d at 21.

Regarding the threatened eviction, Ms. Ramos stated in her affidavit that several months after she and her family moved in, one of her brothers began coming

---

[2] Despite that assertion, Ms. Ramos also states in a footnote in her appellate brief that "the order does not link its finding of a breach to any alleged misconduct by Ms. Ramos."

over in the evenings to drink with Mr. Cisneros and they were "loud and disruptive." One night she asked her brother to leave and he and Mr. Cisneros became "abusive and violent" toward her and "threatened" her with a knife. She stated she "feared for [her] life and the lives of her family" and "had no option other than to ask my father to find another place to live." This evidence did not address how the eviction she sought after a transfer for no consideration was fair, honest, and equitable to Mr. Cisneros. *See Lee*, 286 S.W.3d at 21.

Additionally, Ms. Ramos contends, "If the family attorney didn't know, then Ms. Ramos surely cannot be held responsible, as a matter of law, for knowingly making a false or fraudulent statement regarding insurance requirements that supposedly breached a fiduciary duty." She cites the attorney's deposition testimony regarding insurance and her own affidavit statements that she sought homeowner's insurance after learning Mr. Cisneros "did not have any intention of buying insurance" and "[f]rom my discussion with State Farm, it was my understanding that I could not purchase homeowner's insurance because I wasn't considered the legal owner of the home." Again, there is a logical disconnect: this evidence does not address her burden to show the transaction in question was fair, honest, and equitable to Mr. Cisneros. *Id.*

Moreover, though the trial court's judgment mentions both the threatened eviction and the insurance-related representations, nothing in the judgment limits Ms. Ramos's breach to those two matters. The judgment also describes Mr.

Cisneros's allegations that Ms. Ramos failed to provide the promised "care, support, love, and companionship for him in his aging years," which included more than a place to live. Mr. Cisneros stated in his declaration, "Shortly after she got the second deed, [Ms. Ramos] refused to cook for me, or do my laundry, change my bed, and the like. Rather than providing the promised care and companionship to me as she had promised, instead Cynthia began refusing to cook for me [or] provide groceries for me . . . ." Ms. Ramos does not address or explain, and the record does not show, how any evidence raised a fact issue as to the alleged breach regarding care.

We conclude the propriety of the trial court's summary judgment would not have been affected by consideration of Ms. Ramos's evidentiary objections and summary judgment response. Thus, because her remaining issues challenge the trial court's "failure to consider" her September 25, 2020 motions and evidentiary objections, we need not reach those issues.

We affirm the trial court's judgment.

210006f.p05

/Cory L. Carlyle/ _____
CORY L. CARLYLE
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CYNTHIA RAMOS, Appellant

No. 05-21-00006-CV      V.

DOMINGO H. CISNEROS,
Appellee

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-00429.
Opinion delivered by Justice Carlyle.
Justices Schenck and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DOMINGO H. CISNEROS recover his costs of this appeal from appellant CYNTHIA RAMOS.

Judgment entered this 26th day of April, 2022.